STILWELL *vs.* DOUGHTY.

*In the matter of the estate of* SAMUEL STILWELL, *deceased.*

The testator having given his wife the clear income of certain real estate, and an assessment having been levied upon the premises, for a permanent improvement, *Held* that the life-tenant should pay the annual interest on the assessment, and that the principal should be charged against the remainder men.

WM. FULLERTON, *for Devisees in fee.*

Samuel Stilwell by his will gives to Elizabeth Stilwell, during her life, the clear income of his real estate.

Some of this real estate is situate upon a street through which a sewer has recently been constructed; and the expenses thereof have been assessed against the "heirs of Samuel Stilwell," and are a lien upon the lands in question.

The question is—who is to pay the assessment; and if the tenant for life and remainder men are to contribute to the payment thereof, then in what proportions?

The fact that the testator gave Mrs. Stilwell the " clear income" of his real estate, can make no difference in the decision of this question. By *clear* income, is meant *net* income, or that which remains after the deductions to which the law subjects the fund.

Neither is it an open matter, whether the building of the sewer in question is a benefit to the property in question. That matter is " res adjudicata," and all parties concerned are concluded by it.

Again, although the assessment is against the " heirs of Samuel Stilwell," yet it is in fact an assessment against the land, and is a lien upon it.

Is this to be treated like the ordinary case of *a life estate in lands charged with an encumbrance?* Then the familiar rule is, for the tenant for life to keep down the interest out of the rents and profits, leaving the remainder men to pay the encumbrance. (4 *Kent,* 74, *and cases cited in note.*)

It is equity, that every person having an interest in the real estate should share in the expense of every thing that is done for its benefit. This sewer is deemed a benefit to the property, which the tenant for life enjoys during the continuance of the life estate, and for which she must at least contribute, if not pay the whole expense.

Suppose the "heirs of Samuel Stilwell" should refuse to pay the assessment, the lands would be sold unless the tenant for life should relieve them by paying it. This she might do, and if not bound to pay the whole could hold the same as a charge upon the lands, but without the ability or right to collect interest during her life. (4 *Kent,* 74. *Cogswell* vs. *Cogswell,* 2 *Edwards's V. C.,* 231. *See also Williams* vs. *Cox,* 3 *Edwards's,* 179, *and Cairns and Wife* vs. *Chabert,* 3 *Edwards,* 312.) These cases are quoted on the brief of my adversary, but are conclusive against him, *taking this view of the case.*

It is true that the *land* does not belong to the tenant for life, but the *use* of it does. And in that way, the tenant necessarily derives a benefit from the improvements upon it for which assessments are made.

Suppose, in making an improvement where no part of the land was taken, but still was injuriously affected, instead of assessing benefits to be paid, there were damages to be *received,*—Who would be entitled to them? My learned adversary would not be willing to carry his doctrine so far as to say that his client (although she owned "little really of the land," and the damages *pro formâ* were assessed to the "heirs of Samuel Stilwell") would not be entitled to an equitable apportionment.

But is it not very doubtful whether the remainder men are compelled to pay any part of this assessment, and does it not fall entirely upon the tenant for life?

An ordinary tenant of lands (I mean by contract) is not bound to pay taxes or assessments, it is true, unless he has obligated himself to do so by express covenant; and the reason is, his obligations are governed *by his contract*. Not so, however, in a case like this. The obligations of the tenant for life are cast upon him by operation of law.

This is not an incumbrance upon the property created by the ancestor. In a case of that kind, the equity of making the tenant for life pay the interest, and the remainder man the principal, is apparent; because the tenant for life enjoys the estate *just as the ancestor left it*, and the remainder man *receives it in the same condition*. This is equity. And why should not the same rule apply in a case where the incumbrance is created subsequent to the creation of the life estate, so far as the remainder man is concerned? In other words, is he not entitled to receive the land, when the life estate falls in, in the same condition in which it was left by the ancestor? Would it not seem just to compel the tenant for life to leave the estate in the same condition as when the life estate commenced?

There is certainly great force in the position that the law devolves upon the tenant for life the payment of all taxes and assessments (and there appears to be no distinction (*The People* vs. *Mayor of Brooklyn*, 4 *Coms.*, 419), which may be *created* during the continuance of the life estate. The tax or assessment must be *paid in money*. It cannot be left as a lien on the land, like a mortgage created in the lifetime of the ancestor. The *land*, therefore, must pay the assessment, and it must be paid in money. This would seem to reach the *rents and profits*; also, then the tenant for life is chargeable with the payment of the assessment in this case.

HARVARD LAW SCHOOL LIBRARY.

STILWELL *vs.* DOUGHTY.

CHARLES EDWARDS, *for Widow.*.

The tenant-for-life, here, takes her estate under the law of the time of her taking, and through the will of her husband. The law of the time calls her estate an estate of freehold; but makes it liable only for ordinary tax, which is raised generally and goes for general *present* benefit. The will of her husband might have made it subject to keep down interest on mortgages (as in *Cogswell* vs. *Cogswell*, 2 *Edwards*, *V. C. R.*, 231), or debts (as in *Burges* vs. *Mawby*, 1 *Turn & Russ*, 167) and annuities and assessments.

It has not done so; and the Court have more than a right to presume that the testator meant that his wife should, after his decease, have an estate as certain in its extent as he gave it; and a court that charges her estate with any portion of speculative benefit to the land narrows the testator's intention. Indeed, as it seems to me, the will expressly bars off all extraordinary assessments and charges. She is to have *the clear income of all my real estate : i. e.* the clear income arising from tenants. Now, tenants do not bear assessments; assessments do not come out of income,—Mrs. S., indeed, only gets income; we are entitled to the clear income as received by the executor; and he cannot deduct from it, nor can he encourage the heir, who has no interest in the present " clear income " to compel payment out of it to meet an assessment for a sewer. The principle in *The matter of Ryder*, 4 *Edwds. V. C. Rep.*, 338, should apply; and see what the Master of the Rolls says in *White* vs. *White*, 4 *Vesey*, 33, 34.

In *Williams* vs. *Cox*, 3 *Edwds. V. C. Rep.*, 178, the Vice-Chancellor says: " Then, as to the assessments: these relate to a matter which benefits the fee, *and are to be borne by the heirs.* The complainant, who filed her bill for dower, is not to be chargeable with them. She must, however, bear one-third of the interest of the capital

of the assessment on the lots assigned to her for dower at seven per cent., which is to commence from the time the assessments were confirmed and became a charge, provided this was subsequent to the death of her husband, and, if not, then from his death." Observe, in this case the complainant had not bequeathed to her " the clear income of all real estate," but came for her common-law right of dower out of land already charged (all of it) with an assessment.

It is true that in *Cairns* vs. *Chabert, Id.*, 312, the Vice-Chancellor goes out of his way to touch the matter of assessments. I say goes out of his way, because, although the bill was to compel a tenant for life to keep down assessments as well as taxes, yet the matter of the taxes only came before the Court, on the motion; as the V. C. says: " Here the application is in regard to the payment of ordinary taxes." However, even taking the matter as connected with assessments, the whole amounts to little more than suggestion, cutting neither way—" The tenant for life is bound to keep down ordinary charges for taxes and repairs, out of the rents and income of the estate. The principle, *perhaps*, might not apply in relation to an assessment which goes to permanent benefit of the inheritance. In such a case, it is *likely* that some rule of apportionment would have to be resorted to."

The case of *Williams* vs. *Craig*, 2 *Edwards*, *V. C. Rep.*, 297, is not applicable, as the party attempted to be charged was made liable under an express covenant; nor, perhaps, is the case of *Astor* vs. *Miller*, 2 *Paige's C. R.*, 68, *S. C., on appeal*, 5 *Wend.*, 603 ; except that, as it appears in 5 *Wend.*, it may be gathered—as a covenant to pay assessments runs strictly with the land, and the covenantor cannot be pursued personally—that here, as to our tenant for life, no personal claim can be made, and the assessment is fastened only to the *land*, which the heir

must now protect, so as to have the future benefit of the sewer.

The rights of a tenant for life are very much restricted ; and he cannot take from or charge the fee, and ought not, therefore, while so subject to restrictions, to pay for that which benefits what he does not fully, or, perhaps, not at all enjoy. He cannot cut timber, without being subject to an action for waste; nor can he compel certain permanent and substantial improvements, *Nairn* vs. *Marjoribanks*, 3 *Russ.*, 582; *Cogswell* vs. *Cogswell*, *ante :* nor charge for them, *Thurston* vs. *Dickinson*, 2 *Richardson's S. Car. Eq. Rep.*, 317. Why should, then, a remainder man, through the court, charge for permanent benefit which did not belong to the estate when the tenant for life entered, and which, perhaps, the tenant for life would have objected or did object to?

The possession of the tenant for life, is no better than that of a tenant for a year ; for he may die in an hour. His uncertain term may, in the mind of man, be longer; but the benefits of both, per year, are the same and no more.

A tenant for life is to leave as he takes. In this case, Mrs. Stilwell would leave it better, if she is to pay for a sewer, which she must leave, and which did not attach when she entered.

The case of *Sutton* vs. *Chaplin*, 10 *Ves.*, 66, has relation to when taxes and charges became due after death of tenant for life.

The principle of contribution applies, where all have a present mutual benefit, and is based upon the present.

A tenant, either for life or otherwise, receives no benefit from a sewer unless such tenant goes to an *extra* expense of connecting the usual conveniences of the house with it ; an expense almost always borne by an owner of the fee. There is no benefit until such connection ; and the tenant may not care for, or the premises at the present require it ; while, if it be a sewer not fronting or adjacent, the benefit

cannot be immediate, and, probably, will never be of the slightest advantage to the occupancy of the tenant for life.

There is no law that compels the tenant for life to pay a portion of the assessment for a sewer; and principles of equity should not compel it. If, however, such a thing should be adjudged, it would be through interest on the amount.

The old equity, of compelling a tenant for life to bear a portion of the principal of charges on the property (I refer to charges generally put on by testator, &c.), has long been exploded.

But, *in fine*, it is insisted that this case is outside of reported decisions; because the testator, Samuel Stilwell, has so given a life estate to his wife, that, by the term of the bequest, it is free from deduction on account of this special assessment.

The Surrogate should adjudge that the tenant for life stands free from this assessment.


THE SURROGATE. The testator's will contained the following clause: " Item—I give, devise, and bequeath to my wife, Elizabeth, during her life, and for her use, the house and appurtenances where I now reside, and the clear income of all my real estate, except the land in Broome County." An assessment for a sewer in Chatham Street has been laid upon a part of the premises devised, and a difference has arisen as to the payment, and by whom this charge is to be borne, by the life-tenant or the remainder men. The will gives the widow the " clear income ;" and by that expression I do not understand the gross income, free from any charges, but the income remaining clear after the payment of the current expenses necessary to keep up the estate—the net revenue or produce of the property. To sustain any other construction, to suppose that the widow was to take the income and let the taxes accumulate until,

perchance, the estate were sacrificed, would require words of the clearest and most indisputable import, directions of the most explicit and unequivocal character. An extraordinary assessment, benefiting the fee, is, without doubt, not such a usual charge as should be borne *in toto corpore* by the life tenant. On the supposition of a benefit accruing to the estate, by the improvement for which the assessment is laid, the life tenant has only the use of the improvement to the extent of the annual value, and not of the gross charge. So, on the other hand, the remainder men have not the present use, and will derive no advantage until the estate comes in possession. It is equitable the parties should bear burdens proportioned to their interests; and I think the life tenant should pay the annual interest on the assessment, and that the principal should be charged against the remainder men. I see nothing in the authorities against this rule; and it seems to me the most equitable mode of apportionment, in the absence of proof on which to base any other ratio of adjustment more appropriate.