## MANN *vs.* LAWRENCE.

### *In the matter of the Estate of* JOHN MANN, *deceased.*

IF the executor has made advances for the benefit of the estate out of his own funds, he will be allowed interest when the sums expended were paid for taxes, necessary expenses and repairs, and debts which carried interest.

When the executor kept his accounts in books which were exhibited to the parties interested, the accounts were kept in a plain and intelligible manner, quarterly settlements were made and receipts given for ten years and upwards, it was *held* that under such circumstances the accounts would not be disturbed unless very satisfactory reasons were shown.

An executor who is also named as trustee in the will, though not entitled to commissions in each capacity, shall have his full commissions both for receiving and paying out. on the final settlement of his account as executor.

WM. M. ALLEN, *for Petitioner.*

I. The investment of funds is not a paying out of the same within the statute unless the securities are turned over to the *cestui que trust.* (*Dayton's Surrogate,* 226.) The executor has his commissions for receipt of the principal sum, and commissions on all increase. It should be sufficient therefore to receive his commissions on paying out the estate when he does it.

II. Where the executor advances money to creditors who are importunate, he will be allowed interest. (*Williams' on Exrs.,* p. 1581–82; *Lidell* vs. *Mc Vicar,* 6 *Halsted,* 46–7–8–9; *Storer* vs. *Storer,* 9 *Mass. Rep.,* 37; *Havilland* vs. *Bowerbank,* 1 *Campbell,* 52.) The spirit of these cases is,—that the executor will be allowed interest on advances where he shows that he did it to save costs to the estate, and not for the purpose of making a safe investment of his own funds. The *onus* is on him.

THE SURROGATE.—On the final accounting of the executor, some of the legatees objected to charges made for interest on advances, disbursements for repairs, and commissions on rents alleged not to have been received, and on investments made pursuant to the trusts of the will. As to the question of interest on advances made by the executor, the largest proportion of the advances was for taxes, necessary expenses, repairs, and debts which carried interest. Having advanced his own money to discharge these claims, when it was for the benefit of the estate that the property should not be immediately sold, and the legatees had consented that it should meanwhile be rented, he is of course entitled to be compensated with interest. The weight of the evidence in respect to the repairs, is, that the parties in interest all assented, that no objection was made at the time, and that the repairs were all of them reasonable, and most of them necessary. Their extent was probably not contemplated when the work commenced, but as it progressed other defects appeared.

The commissions on the rents which are set off against the board of the widow and the share of one of the legatees, were charged in the account when the first dividend was declared. Receipts for these rents were passed by the executor and he was responsible for their proper settlement. John Mann, in his receipt of December, 1843, acquits the executor " in full for my proportion of rent received." Phebe Laws also acknowledges receipt of her share from the executor. These rents are to be taken, then, as if they had been actually received.

The charges for the quarter's rent, $13, February 12, and $15, May 1, 1841, for cellar in Murray street, are both sworn to by the executor. There is no evidence controverting them and they must be allowed. It is in proof that the books in which the executor kept his accounts were before the parties at each settlement, the accounts were kept in a plain and intelligible manner, showing the capital of the estate, the charges for commissions, and the items now objected to on this accounting. There were also quarterly statements of

dividends from May, 1844, and the parties received regularly their shares as shown on such statements, and gave receipts. Under such circumstances, the accounts would not be disturbed, unless very satisfactory reasons were shown. The executor's charges for full commissions on the capital of the estate are correct. The proper time for ascertaining the commissions on the capital of the estate is when the investments are made, and the trust account commences. The duties of the executor, on winding up the estate are then terminated, and the special trust account commences. The law allows eighteen months for the final accounting, and when the estate is collected, the accounts are settled and the surplus ascertained. The investments are made by the executors in their trust capacity, and though they cannot receive double commissions where they are both executors and trustees, yet they may receive full commissions as executors.