EAGER *v.* ROBERTS.

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JUNE, 1876.

## EAGER *v.* ROBERTS.

*In the matter of the Estate of* JAMES EAGER, *deceased.*

Under 2 R. S., 86, § 23, which forbids an executor neglecting to join in making an inventory, to interfere thereafter with the estate,—and 2 R. S., 93, § 58, which makes the compensation of an executor dependent on the sums received and paid out,—no commissions can be allowed to an executor who refused to join in the inventory because it was untruthful, and thereafter took no part in the administration.

An executor who is obstructed by his co-executors in the performance of his duty to make a true inventory, should take proceedings to enforce the making of it.

The Act of 1863, which authorises the allowance of separate commissions to several executors where the estate exceeds $100,000,—does not apply in favor of an executor who has not filed an inventory nor performed any duty.

Such an executor, if he has no interest in any unsatisfied bequest, has no standing in court to object to the correctness of the account of his co-executors.

THIS proceeding was a final accounting of the executors, etc., of James Eagar, deceased.

There were three executors; and the account was rendered by two of them as " active executors," so called, and the question submitted related to the right of Mr. Roberts, a third executor, to commissions.

The testator died in August, 1874, leaving a will making several specific bequests, with a residuary clause in behalf of his brother, Jonathan H. Eager, and Joseph Eager, and his sister, Lucy H. Morgan; and nominating his brothers, Jonathan H. and Joseph, and John F. Roberts, executors.

It appeared that the principal portion of the testator's estate consisted of his interest in the firm composed of himself, and his brother Joseph Eager, engaged in the liquor business. Soon after the executors had received

letters testamentary, they proceeded to make an inventory, the executor, Roberts, having notice of the time, and place, but he failed to attend; and after the inventory had been made, he alleged that it was insufficient, and did not embrace the whole property, and he refused to sign and verify the inventory, but urged upon his co-executor, Joseph Eager, to have a disinterested book-keeper to examine into the affairs of the firm for the purpose of ascertaining the property of the testator.

The other executors signed, verified, and filed the inventory, which was subsequently increased by the recovery of a certain note, which was supposed, at the time the inventory was made, to be uncollectable.

It also appeared that soon after the inventory was made, Mr. Roberts had a communication with Jonathan H. Eager, and Mrs. Morgan who resided out of the city, with the view of procuring them to take proceedings to ascertain the real amount of testator's property, which, however, ultimately failed, by their selling out their interest in the residuary estate to Joseph Eager, for the sum of $15,000 each.

It also appeared that Jonathan H. and Joseph took general and active charge of the estate, disposed of the same, and paid the specific legacies pursuant to the provisions of the will, and that no money, or property ever came into the possession of, or was paid out by, the executor, Roberts, and that substantially he took no active charge of the estate, and was only cited on the final accounting.

On the final accounting, numerous objections to the account were filed by Roberts; but it appearing that Joseph Eager was entitled to the whole residuary estate under the will, and by the purchase of the shares of his brother and sister, the question substantially submitted on this hearing was—whether Mr. Roberts was

entitled to commissions as executor, and if so, he asked for the appointment of an auditor to determine the amount of the estate and his commissions.

In behalf of Mr. Roberts, it was urged that he was excluded from the performance of his duty as executor— that he could not in conscience sign, and verify, the inventory, because he believed that it did not contain a full statement of the testator's estate, and that these facts offered sufficient excuse for his not filing an inventory, or rendering an account of his proceedings in respect of the estate.

DEWITT & JOHNSON, *for the Executors.*

JOHN F. ROBERTS, *in person.*

THE SURROGATE.—By section 23 of 2 *Revised Statutes,* 88, it is provided that any one or more of the executors or administrators named in any letters, on the neglect of the others, may return an inventory, and those so neglecting shall not thereafter interfere with the administration, or have any power over the personal estate of the deceased, but the executor or administrator so returning an inventory, shall have the whole administration, until the delinquent return and verify an inventory agreeably to the provisions of this article.

By section 58 (2 *Statutes at Large* 95,) it is provided that on the settlement of an account of an executor, &c., the Surrogate shall allow to him for his services, for receiving, and paying out all sums of money, &c.

Under these provisions of the statute it seems to me that no allowance of commissions for a delinquent executor who has not accounted should be made; for I am not prepared to hold that because an executor is obstructed in the performance of his duty as such, he should abandon his duty altogether, nor is it to be tolerated, that an executor shall be compensated for duties obviously neglected.

Under the circumstances of this case, if Mr. Roberts was obstructed as he sets forth in his affidavit, and he believed that the inventory filed by the other co-executors was false, he was vested with full power to take proceedings and enforce a correct and full inventory, and for that purpose might have invoked the authority of the Surrogate; and if that inventory should not be acquiesced in, signed, or verified by his co-executors, nevertheless it would have been an inventory of the estate, and his duty as executor have been performed.

The same may be said in respect to any other duty of Mr. Roberts as executor, and it is unreasonable to suppose that he performed his duty as such executor, by merely protesting against what was done by his associates. If they neglected their duty to the estate, it was his duty to enforce the lawful performance of it on their part, as well as to perform it himself; and omitting to do it, he is clearly a delinquent executor.

It is urged on behalf of Mr. Roberts that the statute of 1863 authorizes an allowance to him of the commissions irrespective of what he has done, without regard to the services rendered by him, and he cites the case of *Vannest* (1 *Tucker*, 130).

The language of that case is quite too broad, for the statute itself provides that each and every of such executors in cases where estates amount to more than $100,000, shall be entitled to, and shall be allowed, the full amount of compensation, to which he would have been entitled by the provisions of that Act, if he had been sole executor or administrator.

If he had been sole executor, and had not received or paid out any of the sums of money belonging to the estate, but had neglected to perform his duty as executor, it is quite clear he would not have been entitled to commissions.

His failure to present any account of the proceedings, or join in the accounting, and inasmuch as he neither received nor disbursed the property of the estate, nor took any proceedings in its distribution, or payment of legacies, he has forfeited all right to commissions.

As Mr. Roberts is only interested in the question of commissions, the specific legacies having been fully paid together with all the debts of the estate, and the executor, Joseph Eager, having become the owner of the residuum by purchase, Mr. Roberts has no standing to object to the correctness of the account as rendered.

Decree entered accordingly.