NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—SEPTEMBER, 1876.

## BOHDE v. BRUNER.

*In the matter of the Estate of* HENRY BRUNER, *deceased.*

Under a will which directs the executors to convert into money the personalty not securely invested, and invest and keep it invested on bond and mortgage or public stocks,—they have not authority to loan on mere personal security, and at less than the lawful rate of interest.

An executor who does so is liable, personally, not only for the safety of the principal, but for the lawful rate of interest.

Under a bequest of "the income" of real estate "after payment of taxes," assessments are not to be deducted from the income.*

It is not an insuperable objection to allowing a gross sum for disbursements made by the executor in managing the estate for a series of years, that he is not able to give in detail all the various items of charge.

The executor may be allowed for clerk hire necessarily incurred in the administration of the estate.

An unquestioned charge in the executor's account, for services rendered in settlement of the estate by the clerks of a firm of which the executor is a member, may be allowed to the executor, on condition of his producing the receipt of the firm.

Where three commissions are to be divided among more than three executors, under the act of 1863, no discrimination can be made among them, although one of them performed most of the labor.

---

*Compare *Gillespie* v. *Brooks, post.,* 349.

THIS was a motion to confirm the report of the auditor, and referee, Henry J. Cullen, jr., Esq., on final accounting in the estate of Henry Bruner, deceased. Exceptions to the report were filed by various parties on various grounds. The special guardian of the infants excepted, because the auditors did not charge Messrs. Bruner and Moore 7 per cent. interest, on the amount of a loan, and did not charge interest on a loan to Peter Bruner, from the date of loan, at 7 per cent. and did not charge the widow with certain assessments on the real estate.

The counsel for the executors, Bohde and Flanigan, excepted to an allowance of $1,200, to Peter Bruner, for disbursements and expenses, from February, 1872, to May, 1876, and also to an allowance of $350, paid his counsel, and to the division of commissions.

The counsel for the executor, Peter Bruner, excepted because the auditor refused to allow $1,700 for the services of clerks, &c., being clerks of Bruner and Moore from 1872 to 1876.

OSBORN E. BRIGHT, *for the executor.*
WM. McDERMOTT, *for the widow.*
F. F. VAN DERVEER, *Special Guardian.*
R. F. ANDREWS, *for executor, Peter Bruner.*

THE SURROGATE.—As to the first and second exceptions, it appeared by the testimony that the firm of Bruner and Moore, composed of Peter Bruner, the executor, and one Moore, borrowed of the executors, on their note at three months, dated October 4th, 1870, $15,000, and that they repaid, November 3rd, 1872, $5,000, and that Peter Bruner borrowed on his note, May 26, 1871, $10,000 on which it is claimed he gave certain securities.

On the first note, interest appears to have been paid to May 4th, 1873, at the rate of 4 per cent. which was the agreed interest of the time of the loan.

On the second note, interest at 4 per cent. was paid to 1873, and it appears that these loans were either made or approved by a majority of the exectors.

On the subject of the third exception, the report of the referee finds that the executors and trustees should not have charged the widow with one-third of the amount of money paid for repairs to the real estate, —that they erred in charging her with one-third of the assessments upon the same, and with one-third of the insurance thereof, and that such deductions amount to the date of report, to $11,302.02.

The will provides in its fourth clause, that the executors and trustees shall rent the rest of the real estate, not specifically devised, and from the rents pay the taxes on said real estate, and pay the widow one-third of the remainder of said rents during her life, and to pay insurances on the buildings, and apply the balance of such income, or so much as may be necessary, to the education, and support of her children. As to the first exception of the executors Bohde and Flanigan, it appears in the testimony that Peter Bruner, one of the executors who had chief charge of the administration of the estate, by leave of this Court presented a supplemental account for disbursements, expenses of carriage hire, car fare, &c., during the years mentioned above, amounting to $1,200, which he testified was actually paid, and more than that amount, and that they were necessary disbursements. On cross-examination, he testified that he kept no account in detail of the disbursements, but gave in general terms the nature of the expenditures. He testified also that he paid his counsel, R. F. Andrews, Esq., $350, as a retainer on the reference in this estate, believing that counsel was necessary. The referee in his report finds that the commissions should be calculated on the sum of $285,598.65, and allows three commissions amounting to $3,030.09,

each—to Peter Bruner one full commission, and to John R. Flanigan the same, and divides the other third commission between Bohde, and the widow equally.

As to the exceptions of the executor Peter Bruner to the disallowance by the auditor, of $1,700, charged in the supplemental account for services of clerks, &c., in the employ of Bruner and Moore, from February 1st, 1872, to May 1st, 1876, it appears in the testimony that Peter Bruner had the principal management of the estate —that he and Moore were co-partners in business, and that the co-partnership presented an account of $1,700 for services of their clerks rendered to the estate for the period mentioned, which was verified by Mr. Bruner, and in attending to the estate, and collecting the rents of various premises, and that he employed three clerks of Bruner and Moore to aid him in doing the business, and that their services were worth more than the amount charged, although they were paid wages by Bruner and Moore, and not by Mr. Bruner as executor.

The sixth paragraph of the testator's will provides that the executors shall convert the personal estate not securely invested, into money, and invest and keep the same invested upon bond and mortgage, or public stocks of the government of the United States, or of the state of New York.

Under these provisions of the will, it seems to me that the executors had no authority to keep any considerable proportion of the money resulting from the sale of the personal property in a Trust Company or Savings Bank, much less to loan it to individuals without the security contemplated by the terms of the will; indeed in the absence of the positive provisions stated, I am of the opinion that the executors were not authorized to loan the money on individual security, at any rate of interest, much less, at a rate less than 7 per cent.

It is no answer to say that the loan made by the executors in this matter, was to persons concededly solvent, for the law does not permit the exposure of trust funds to any such precarious securities, and when executors venture to loan trust funds upon such uncertain security, they must be held to have loaned it in violation of the law and are chargeable with the amount of lawful interest. But when such loan has been made in direct violation of the requirements of the will, it seems to me a self-evident proposition that the executors make themselves personally responsible not only for the fund itself but for lawful interest thereon.

In *Gilman* v. *Gilman*, (2 *Lans.*, 1.) the language of the will was quite similar to that of the will under consideration, and the excuses made by the executors for not investing the funds, according to the provisions of the will, were, that the parties interested objected to the investment in United States bonds, the difficulty of investing on bond and mortgages, and that they kept the money so that they could at any time pay over to the persons entitled. But the court held that none of those reasons justified the executors in disobeying the directions of the testator. If the limited state securities were considered objectionable, and if it was difficult to loan on bond and mortgage, there were other securities of states or cities, which were not subject to the same objections, and it was their duty to invest these moneys until they were wanted for payment of the legatees. See *King* v. *Talbott*, 50 *Barb.*, 453; 40 *N. Y.*, 76; *Redf. Surr. Pr.*, 250.

It cannot be said, nor does it appear in the proof, that the money loaned to Bruner and Moore, and to Bruner, could not have been invested in some of the securities named in the will, and I am of the opinion that the executor Peter Bruner should be charged 7 per cent.

interest upon the money so loaned, from the time of the loan, for he is chargeable with the knowledge of the terms of the will, and it is no answer for him to say that he loaned the money with the permission of the other executors at a reduced rate of interest. The law will presume that he received it with a knowledge that it was in violation of his duty as executor, as well as of the provisions of the will.

As to the question of the liability of the widow for repairs, assessments and insurance upon the real estate, to one-third of the proceeds of which, by the terms of the will, she was entitled, after the payment of taxes, I think the auditor and referee properly found that she was not chargeable, and that she had been improperly charged by the executor.

It is a mistake to suppose that she occupied the position of life tenant of the real estate mentioned, and therefore none of the authorities relied on, upon that point, by the special guardian, apply to this case.

In the case of *Doughty* v. *Stilwell* (2 *Bradf.*, 311), the language of the will gave to the widow the clear income of the testator's real estate, and it was held that clear income meant net income; and that the widow was therefore chargeable, not with the full amount of the assessments, in proportion to the income to be received by her, but with the annual interest on the amount of the assessments, and that the assessments should be charged against the remaindermen, but the will in question is specific, that the widow is to have one-third of the income of the real estate after payment of taxes. It is well held by the several authorities that the term taxes does not include an assessment.

In *Sharp* v. *Spier* (4 *Hill*, 76), Justice BRONSON, at page 82, says, " our laws have made a plain distinction between taxes which are burthens, or charges im-

posed upon persons, or property to raise money for public purposes, and assessments for city or village improvements which are not regarded as burthens, but as an equivalent or compensation for the enhanced value which the property assessed had derived from the improvement." (*Matter of the Mayor*, 11 *Johns.*, 77 ; *Matter of Ford*, 6 *Lans.*, 92.)

As to the exception to the allowance to Peter Brunner, by the referee, of $1,200 for expenses, &c., as it is a question of fact, and the witnesses were before the referee, who could best judge of their credibility, and heard the details of the evidence, and as it must be apparent that in the management of so large an estate for over six years, very considerable disbursements of the kind charged in the account must have been made, though the executor is not able to give in detail the various items of charge, I see no such discrepancy between the proof, and the conclusion of the referee, as would justify me in interfering with him, in that respect.

I see no reason to doubt the propriety of the allowance of $350, shown to have been paid to his counsel by the executor, Peter Bruner, in respect to the preparation and hearing of this accounting, though it may be proper on the question of allowances on signing of the decree, to consider that payment.

In considering the exceptions of the counsel for the executor, Peter Bruner, to the disallowance by the auditor of, $1,700 charged for clerks, &c., it is quite evident that so large and estate, and in the condition which this estate was, under the care of this particular executor, necessarily required some assistance from an agent, or clerk, to give it proper attention, and the expense of such agent, or clerk is a proper charge upon the estate. (*McWhorter* v. *Benson*, *Hop.*, 28 ; *Vanderheyden* v. *Vanderheyden*, 2 *Paige*, 287 ; *Cairns* v. *Chaubert*, 9 *Id.*, 160.)

The difficulty in allowing the executor Bruner, for the amount of his charge inserted in his account, arises from the fact that the clerks employed were clerks of the firm of Bruner & Moore, of which the executor was a member, and the charge is made in the form of a claim presented by Bruner & Moore, and not passed upon by the executors as such; yet as the services were rendered, and as there is no dispute either upon that question, or the real value of those services to the estate, it seems to me but right on this accounting, that it should be regarded as a credit to Mr. Bruner, executor, on his presenting a receipt for its payment to Messrs. Bruner & Moore. This certainly is equitable, and the only danger of allowing it to Mr. Bruner as executor, arises from the probability of the claim still being made by Bruner & Moore as co-partners against the estate, which will be sufficiently avoided by the receipt suggested.

By chapter 362, of the laws of 1863, section 8, it is provided, that if the estate shall amount to not less than $100,000, over, and above all debts, &c., and there shall be more than one executor or administrator, each and every of such executors or administrators, shall be entitled to, and allowed the full amount of compensation that he would have been entitled to, if he had been sole executor, or administrator, provided that such compensation should not exceed the amount payable to three executors or administrators, and if there are more than three, what would belong to three should be divided among all in equal shares.

Under this Act, it is clear that no discrimination can be made in favor of any particular executor, where the estate exceeds $100,000; in this case, therefore, the three commissions must be divided equally between the executrix, and executors.

The evidence in this matter, and the elaborate report

of the auditor shows that the estate had received great care and attention, as to the questions involved in this accounting, and do great credit to the auditor and counsel engaged, and it is with reluctance that I dissent from any of the conclusions of so intelligent and faithful an auditor, but on the most careful consideration of the questions raised, that I have been able to bestow, I am persuaded that both law and justice require that the report of the auditor should be modified, in the respects above suggested, and in others confirmed.

Decree accordingly.