NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.— May, 1879.

WARD *v.* FORD.

*In the matter of the estate of* AUGUSTUS H. WARD, *deceased.*

Upon a final accounting of testamentary trustees pursuant to an order of the court, or the provisions of the statute (3 *R. S.*, 102, § 80 [6 ed.]), full commissions are chargeable, although upon their accounting as exec-

utors they had received full commissions, and when the estate exceeds $100,000 over and above debts and liabilities, full commissions will be allowed to each of the trustees, not exceeding three, and where there are more than three, three full commissions must be equally divided between the trustees. (Following Cram v. Cram, 2 *Redf.*, 244 ; *In re* Pike, *Id.*, 255.)

Double commissions will not be allowed to executors as testamentary trustees except where the will clearly shows that. a trust has been created separate and distinct from their duties as executors. In such a case, commissions will be allowed, although the trustees have not received the fund by actual transfer from a second party, but from themselves as executors.

Neglect of duty will not deprive an executor or trustee of his right to commissions. But all commissions are applicable to the liquidation of any claim on the part of the estate against such executor or trustee, whether it be an original indebtedness, or a liability adjudged on his final accounting.

Upon the final accounting of an executor, administrator or trustee, he is entitled to full commissions, one-half for receiving and one-half for so much as he has paid out, or by the decree is directed to pay out or deliver, either to the beneficiaries, or to his successor in office. The literal interpretation of the statute limiting commissions to cases where there has been both a receipt *and* disbursement of funds is not to be adopted.

Trustees are entitled to commissions on the body of the estate without distinction between personalty and realty.

Valentine v. Valentine, 2 *Barb. Ch.*, 430, distinguished.

MOTION to confirm auditor's report on final accounting of testamentary trustees.

The accounts referred were those of Henry W. Ford, as trustee under the will of Augustus H. Ward, and of James W. G. Clements, as trustee under the same will. The accountings were consolidated.

The auditor reported among other things that the estate held two mortgages, one made by the trustee Clements and his wife to the testator, for $11,000, payable on the 27th September, 1868, on 19 Amity street; the other, a prior mortgage by the same parties on the same premises, for $3,000, payable 1st May, 1852, acquired

by decedent in his lifetime. That Clements had permitted the taxes to fall in arrear and failed to pay interest; that the last installment of interest upon the $3,000 mortgage was paid 14th July, 1873, and on the 27th March, 1878, the arrears of interest on the larger mortgage amounted to $2,695; that Ford, the other trustee, did not think the property sufficient security for payment of the principal, but doubted his power or duty to foreclose, and regarded the commissions to which his co-trustee would be entitled sufficient to secure the estate against loss. That it was likely that a loss would result if reliance only be had upon the security, but the amount of loss could not be determined except by foreclosure. That Clements had retained commissions from the estate while indebted thereto for the interest on the mortgages. No evidence upon the question of commissions to be allowed to the trustees was given before the auditor, as that subject was not embraced in the order of reference.

It appeared by the summary of the account, that the trustees were charged with over a million of dollars for capital and increase, and were credited with loss $2,340.09; real estate valued at $600,000; bonds and mortgages, including property bought in on foreclosure, $262,500; United States Bonds, $150,198.75; and a note of W. H. Ward, $3,000; aggregating $1,022,038.44; and showing a cash capital in hand of $18,873.83. They were charged in the income account $359.659,57; and credited with expenses of administration of real estate, $89,372.57; of personal property, $39,497.66; payment to beneficiaries, $217,000; leaving cash balance of income $13,789.34.

No commissions had been allowed to the trustees as

such, or to the executors on the real estate of $600,000 ; but commissions had been allowed to the executors as such, upon the principal of the personalty, amounting to $440,912.61 ; but nothing had been allowed to them as trustees.

The trustees claimed that they were each entitled as such to half commissions on the principal.

The executor Clements, asked that the decree should provide that his commissions be applied to his indebtedness, and, as the property covered by the mortgages was out of repair, the sum of about $1,000 of such commissions should be appropriated for the repair of the premises, and that he be permitted a reasonable time to dispose of the property at private sale, and that all his subsequent commissions as trustee be retained for the purpose of liquidating his debt.

The trustee Ford, by his counsel, submitted that the trustees were entitled to full commissions upon the real estate.

Counsel for the *cestuis que trust* claimed that no commissions should be allowed upon the principal of the estate, because the accounting concerned the income only, and the trustees continued to hold the trust estate ; that half commissions are not allowed by law, and that they can only be allowed on receiving *and* paying out ; and that the commissions asked upon the real estate should be allowed, if at all, only upon the *actual* value thereof, and not its *estimated* value.

The proctor for Mary E. Easton, and special guardian for Anna L. Easton, a minor, objected to any allowance of commissions to the trustees, on any of the trust fund, because, on a former accounting, they had received com-

missions as executors.    Objection was also made by him to any allowance to the counsel for the trustee Clements, because Clements was a defaulter to the estate.

IRVING WARD, *for Clements, trustee.*

EVARTS, SOUTHMAYD & CHOATE, *for Ford, trustee.*

DE FOREST & WEEKS, *for cestuis que trust.*

ALFRED T. ACKERT, *proctor for Mary E. Easton, and guardian for Anna L. Easton.*

THE SURROGATE.—By section 71 of 3 *R. S.*, 101 (6 ed.), it is provided, that on the settlement of the account of an executor or administrator, the Surrogate shall allow to him for his services, and if there be more than one, shall apportion according to the services rendered, over and above his or their expenses, for receiving and paying out any sum not to exceed $1,000, at five per cent., or any sum exceeding $1,000, and not amounting to $10,000, at two and a half per cent., and for all sums above $10,000, one per cent., together with actual and necessary expenses.    If the personal estate amount to not less than $100,000, over and above debts and liabilities, and if there shall be more than one executor or administrator, instead of apportioning the compensation as above provided, each shall be entitled to full compensation, as though he had been sole executor or administrator, provided the whole amount of compensation shall not exceed what would be paid to three executors or administrators ; and if more than three, the three commissions shall be divided in equal shares.    By section 80, 3 *R. S.*, 102 (same edition), trustees by will or appointed by competent authority, &c., are authorized, from time to time, to render and finally settle their accounts before the Surrogate in the manner provided for the final settle-

ment of accounts of executors or administrators; and the Surrogate is directed to allow to the trustees the same compensation for their services by way of commissions as are allowed by law to executors and administrators. In Cram *v.* Cram (2 *Redf.*, 244), on a careful examination of the authorities, it was held that whenever such accounting was made pursuant to an order of the court, or the provisions of the statute, full commissions were chargeable, although as executors, on their accounting as such, they had received full commissions. And in the Matter of Pike (2 *Redf.*, 255), it was held, that where the estate exceeded $100,000, over and above debts, &c., each executor was entitled to full commissions to the number of three, and that if there were more than three, three full commissions must be equally divided between the trustees. To the same effect see Bohde *v.* Bruner (2 *Redf.*, 333).

In Gillespie *v.* Brookes (2 *Redf.*, 349), and the Matter Mount (*Id.*, 405), it was substantially held that the fact that the executors had neglected their duty in converting securities, which resulted in a loss to the estate, did not deprive them of their right to commissions. But counsel in this case have cited these authorities as establishing the point that an executor or trustee may be entitled to his commissions, and receive them, notwithstanding he is indebted to the estate, or chargeable with loss thereto, by reason of his mismanagement. These authorities did not hold any such doctrine, but they proceeded upon the theory that the commissions had been earned, and that they were applicable, so far as may be necessary, to the liquidation of the claim against the executor, whether it was a debt to the estate, or a liability ad-

judged on his final accounting ; such decree is upon the theory that his liability will be discharged to the estate.

The case of Valentine *v.* Valentine (2 *Barb. Ch.*, 430), does not sustain the point to which it is cited, to wit : that commissions can only be allowed on such sums as shall have been both received *and* paid out.   The question in that case was whether the commissions should be computed upon the aggregate amount received and paid out, or whether the executors might charge five per cent. each for the first thousand received by them respectively, and two and a half per cent. upon the next $5,000 respectively, and it was held that the latter computation was unlawful.   In White *v.* Bullock (cited 15 *How. Pr.*, 102), the only point raised and passed upon by the court was whether a decree granting allowances to the executors before the act of 1849, authorizing the Surrogate to apportion the commissions, entitled the executors to an equal share.   Nor did the question under consideration arise in Westerfield *v.* Westerfield (1 *Bradf.*, 198), nor in Eager *v.* Roberts (2 *Redf.*, 247), nor in Foley *v.* Egan (13 *Abb. Pr., N. S.*, 361, note).   Nor do I understand that the case *In re* Kellogg (7 *Paige*, 265) is repudiated by the justice sitting at Chambers in that case.   In the Matter of Roberts (3 *Johns. Ch.*, 43), Chancellor KENT, on the petition of a committee of a lunatic, for an allowance for compensation as such committee, under the act of 1817, chapter 251, providing that it should be lawful for the court of chancery, in the settlement of the accounts of guardians, executors and administrators, to make reasonable allowance for their services above their expenses, and that when the rate of such allowance should be settled by the Chancellor, it should be conformed to in all

cases in the settlement of such accounts, adopted the rate of compensation of five per cent. on all sums received and paid out, not exceeding $1,000 (that is, two and a half per cent. for such sums received, and two and a half per cent. for such sums paid out); two and a half per cent. on any excess between $1,000 and $5,000, and one per cent. on the balance. That case states that on the 1st of October 1817, a general rule establishing such allowance to guardians, executors and administrators, was made. (See *Id.*, 630, for the rule.) In the Matter of Kellogg (7 *Paige*, 265), the Chancellor, at page 267, says: "The Surrogate gave certain allowances by way of commissions for receiving and paying out moneys by the executor, guardians, &c., without specifying how much is to be allowed for receiving, and how much for paying out the same, and it may sometimes happen that the guardian or trustee may be entitled to compensation for one service, and not for the other. In such case the language of the statute must be construed with reference to the decision of Chancellor KENT in the Matter of Roberts, which had established the allowance, half commissions for receiving, and half for paying out the trust moneys;" and it was held that the trustee was entitled to half commissions for receiving, and half for paying out, notwithstanding the language of the statute fixed the commissions for receiving *and* paying out moneys.

If a literal interpretation of the statute authorizing the allowance of commissions should be adopted, it would undoubtedly exclude the allowance of commissions, except in a case where there had been both a receipt *and* disbursement of money. In the Matter of De Peyster (4 *Sandf. Ch.*, 511), it was held that a trustee, in passing

his accounts and transferring the property to his successor, was entitled to commissions on the capital of the estate, consisting of stocks, and bonds and mortgages, though some came to him from his predecessor, and were neither invested nor converted by him. It was objected, by counsel opposed to the allowance, that the statute gave commissions only for *money* payments. It was held, in that case, that the trustee was entitled to commissions on real estate, which his predecessor bid in on a foreclosure of mortgage thereon. In Wagstaff *v.* Lowerre (23 *Barb.*, 209), it was held that trustees were entitled to commissions on the amount of property held by them in trust, without any distinction between real and personal estate. In Mcacham *v.* Sternes (9 *Paige*, 398), it was held that a trustee was entitled to commissions upon sums with which he was charged, in consequence of loss arising from his negligence, and on debts due to himself, as one of the *cestuis que trust*, as also on the balance in his hands, which he is directed, by the decree, to pay to the *cestuis que trust.* The Chancellor, at page 404, says: " I believe it has been the uniform practice of the courts, since the passage of the act of April, 1817, to allow the executor and administrator, or guardian, his half commissions upon the whole amount of the debit side of the account against him." (See also *Tiffany & Bullard Law of Trusts*, &c., 844.)

From this examination of the authorities, as well as upon the obvious principles of justice, I am of the opinion that an executor, administrator or trustee, on an accounting such as this is, is entitled to full commissions, one-half for receiving, and one-half on so much as he has paid out, or by the decree is directed to pay out or de-

deliver, either to the beneficiaries under the trust, or to his successor in office ; and this view is confirmed by the case of Mann *v.* Lawrence (3 *Bradf.*, 424). Indeed, it would be an absurdity to hold that the statute in question was to be literally and conjunctively interpreted, for a case might arise in which a trustee might receive, invest, and pay interest on a trust fund for a series of years, and never pay it out, either because of his death, or possibly the destruction of the fund.

The next question to be considered is whether the trustees in this case are entitled to commissions, as though they had not been executors, and received commissions as such. In Valentine *v.* Valentine, above cited, one of decedent's sons was a lunatic, and the testator directed his executors to invest his share of the estate in good security, and apply the income to his support for life, and pay the principal to his children equally, after his death. On the accounting of the executors, the Surrogate allowed to each executor full commissions of five, and two and a half per cent. But the Chancellor, at page 438, held that the funds in the hands of the executors for the benefit of the lunatic and his children, were held in their character of executors, and that the trust and executorship were inseparable, and therefore they were not entitled to double commissions, first in the character of executor, and again in the character of trustee, and suggested that it would have been otherwise if the will had directed them to pay part of the fund to one of their number as trustee, upon a separate and distinct trust. In Westerfield *v.* Westerfield (*supra*), Judge BRADFORD held, that double commissions would not be allowed on a legacy given to an executor in trust ; but if

the trust required him to receive and disburse the income, he would be entitled to commissions on the income, and to the expense of managing the trust, as against the legatee or *cestui que trust*.

In that case the will set a certain fund apart, then invested on bond and mortgage, to be held and disposed of by her executors upon certain trusts, and the learned Surrogate held, under the authority of Valentine *v.* Valentine (*supra*), that in directing the executor to hold the fund in trust, he did not divorce the trust from the executorship, but attached it to it, and the trust belonged to the office of executor. But he also suggests that he should not allow the executor and trustee double commissions, because he had authority over him as executor only. That case arose in 1850, and anterior to the statute authorizing the Surrogate to require trustees, as such, to account, and to allow them commissions. In Drake *v.* Price (7 *Barb.*, 388), it was held that after having received full commissions on money directed·to be invested by executors for the benefit of the legatee, the executors were not entitled to charge five per cent. for receiving and paying out interest moneys to the legatee annually, but they should charge only one per cent. BARCULO, J., held that commissions were not to be taken in two capacities as executors, and trustees, citing Valentine *v.* Valentine. He stated that in Vanderheyden *v.* Vanderheyden (2 *Paige*, 287), full commissions were allowed upon annual rests and disbursements, but that in that case there were annual rests made for the purpose of charging interest, and were regarded as annual settlements of the accounts ; that in the case under consideration the payment of the

income by the executor was a mere continuance of his duties, and that, having received full commissions on the fund invested, he should take only one per cent. on the proceeds of the funds ; he was not permitted to begin anew every year. This latter case went to the Court of Appeals, and is reported in 5 *N. Y.*, 430, and was decided in October, 1851, and was affirmed. FOOTE, J. said, that the material question was whether the executors held the funds as executors, or trustees, or whether as executors they had paid it over to themselves as trustees, and held it in the latter character. In Lansing *v.* Lansing (45 *Barb.*, 182), it was held that there was no trust created in the hands of the executors, distinct and separate from their duties as such, the testator not naming them as trustees, nor manifesting any intention that they should act otherwise than as executors ; and without proper words to establish a trust, it should not be inferred ; that acting as executors only in the investment and management of a legacy, the executor was entitled to commission of one per cent. only upon the increase of the fund, such increase being a mere addition to the principal fund. (See the cases of Drake *v.* Price, Valentine *v.* Valentine, Westerfield *v.* Westerfield, *supra.*)

An examination of the will of the testator clearly shows that there was a trust created in the hands of the executors, distinct and separate from their duties as such executors. By a decree entered herein on the 4th day of September, 1872, the executors are directed—it being recited that they had fully accounted for all moneys and property of said estate, which had come to their hands as such, and that their account had been

finally settled to retain, as trustees under said will, the balance of principal remaining in their hands, and also the real estate remaining unsold, appraised at $600,000, and naming the several trusts mentioned in the will.

I am of the opinion that section 80 of 3 *R. S.*, above referred to, being chapter 115 of the *Laws of* 1866, gives to trustees, as such, the same commissions as executors. If any discrimination had been intended against such trustees as were also executors, it would have been so provided in the act itself.

It is conceded by all the authorities, that if the executors were directed to hand over a fund to one of their number as trustee, the trustee would be entitled to full commissions, notwithstanding the executors had received their full commissions as such ; and yet it might often occur, that a particular trustee would be in actual possession of the entire assets remaining, and there would be no transfer of the trust fund from the executors to the trustee. The trustees are directed to retain the fund as such, in a different capacity from that of executors. Although the statute granting commissions refers to the receipt and payment of assets for which they are to be compensated by way of commissions, it is entirely clear that those commissions are not allowed solely for the performance of that duty, but for the right administration of the estate, including investment and re-investment, and all the responsibility attending such a trust. Indeed, the major part of the responsibility is the care of the fund, and it would be entirely illogical to say that, because the trustee has not received, by actual transfer, the fund from a second party, but from himself as executor, therefore he shall receive

no compensation as trustee for the proper administration of the estate. In the cases of Pike, and Cram *v.* Cram, above referred to, I reached the same conclusions, without a full discussion of the authorities or the principle upon which that conclusion was based. In the matter of Pirnie (1 *Tuck.*, 119), Surrogate TUCKER held that the act of 1866 gave full commissions to trustees upon each accounting, but in that case it does not appear whether the trustee had received commissions as executor, and therefore, as the case stands, I do not regard it as authority upon the questions involved in this case.

I come next to the consideration of the question, whether commissions should be allowed to trustees on the real estate, and if so, how much. In Mann *v.* Lawrence (*supra*), Surrogate BRADFORD held that the executors, on their accounting, were entitled to charge full commissions on the capital of the estate. In Wagstaff *v.* Lowerre (*supra*), it was held, on full discussion, that the trustee was entitled to full commissions upon personal estate, as well as on real estate, held by him in trust, and that there was no distinction between real and personal estate.

In the Matter of De Peyster (4 *Sandf. Ch.*, 511), trustees are held to be entitled to commissions on the capital of the estate, including real estate which their predecessor bid in, on a sale on foreclosure, the latter being in equity personalty, as to the trust estate; and the head-note states, *semble* as to real estate, generally vested in trustees. (See also Meacham *v.* Sternes, *supra*.)

I am therefore of the opinion that the trustees, as such, are entitled to one-half commission on the body of

the estate without distinction between personalty and realty; that the commissions thus allowed to the trustee, Clements, should be applied to the liquidation of his indebtedness to the estate on the mortgages in question, after the payment of taxes in arrear; and the decree should provide for the retention of all his future commissions until said mortgages shall be fully paid; and that the said mortgages be foreclosed without delay, unless the arrears of taxes and interest be paid, and the principal of the two mortgages reduced to $9,000.

Ordered accordingly.