NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—February, 1885.

ROWLAND *v.* MORGAN.

*In the matter of the estate of* EDWIN D. MORGAN,
*deceased.*

The provision of the Revised Statutes (2 R. S., 93, § 58), concerning the
commissions of executors and administrators, which directs the allow-
ance thereof for receiving and paying out *sums of money*, is to be so
construed as to treat the reception of every variety of assets as a
receiving of money, and the application of such assets to the discharge
of debts and legacies, and to the establishment of trusts, etc., as a
pecuniary disbursement.

A result of the adjudicated cases is a recognition of the divisibility of the
commissions of executors and administrators, for receiving and for
paying out moneys, and of the propriety of an allowance, in many
instances, of half-commissions, for receiving, in advance of any paying
out whatever.

Upon the judicial settlement of the account of executors, a question hav-
ing arisen as to the mode of computing commissions upon certain
securities which, forming part of the assets of testator's estate, had
been retained by the former under authority conferred by the will, and
were about to be delivered to testamentary trustees,—*Held,*

1. That the market value of such securities, at the time when they came
into the executors' hands, should be taken as the basis for half-commis-
sions, for receiving; and

2. That the half-commissions, for paying out, must be computed upon
their value at the time of entering the decree directing their transfer
to the trustees.

SETTLEMENT of decree upon judicial settlement
of account of Edwin D. Morgan and others, as execu-
tors of decedent's will. William F. Rowland, an infant
nephew of decedent, and others, appeared in the pro-
ceedings. The facts are stated in the opinion.

DANIEL LORD, *for executors.*

JOHN H. PARSONS, *special guardian.*

THE SURROGATE.—Among the assets of this decedent's estate, at the time of his death, were certain corporate securities whose market value is subject to great fluctuations. Some of those securities are still in the hands of the executors who are here accounting, and the decree to be entered in this proceeding will direct their delivery to the testamentary trustees. Their present market value is less than the value which was put upon them at the time the executors filed their inventory. Under these circumstances, how must they be rated, in the computation of commissions ?

The statutory provision regarding commissions (§ 58, tit. 3, ch. 6, part 2, R. S. ; 3 *Banks*, 7th ed., 2303) is in the following words : " On the settlement of the account of an executor or administrator, the Surrogate shall allow to him, for his services . . . . . *for receiving and paying out all sums of money,*" etc., " at the rate," etc.

A strict interpretation of the language just quoted would not authorize the award of commissions upon any assets of a decedent's estate, except such as had been theretofore actually reduced to money ; but it has been repeatedly held that the provision should be so construed as to treat the reception of every variety of assets as a reception of money, and the application of such assets to the discharge of debts and legacies, to the establishment of trusts, etc., etc., as a paying out of moneys, within the meaning of that expression in the statute (Cairns v. Chabert, 3 *Edw. Ch.*, 312 ; Matter of De Peyster, 4 *Sandf. Ch.*, 511 ; Wagstaff v. Lowerre, 23 *Barb.*, 209 ; Ogden v. Murray, 39 N. Y.,

202; Ward v. Ford, 4 *Redf.*, 34; Matter of Roosevelt, 5 *Redf.*, 601).

In still another particular, the statute above quoted has been liberally construed. Though, in terms, it seems to provide for the allowance of five, two and one half, and one per cent., commissions, upon such amounts, and such only, as have been both received and paid out, the courts have frequently sanctioned the allowance of half commissions for receiving, in advance of any paying out whatever. This practice seems to have obtained before the enactment of the present statute, and under the rule in Chancery established in conformity with the act of April 15th, 1817. That act authorized the Court of Chancery, in the settlement of the accounts of guardians, executors and administrators, to make them a reasonable allowance for their services, and provided that, when the rate of such allowance should be fixed by the Chancellor, it should be conformed to in the settlement of such accounts.

This rate was subsequently established by an order of the Court of Chancery (3 *Johns. Ch.*, 631). It is in these words: "Ordered, that the allowance settled by the Chancellor as a compensation for guardians, executors and administrators in the settlement of their accounts . . . . . for receiving and paying money shall be five per cent., on all sums not exceeding $1,000 *for receiving and paying out the same*," etc.

In 1838, after the enactment of the existing law, a report of one of the Vice Chancellors came before Chancellor WALWORTH for confirmation (Matter of Kellogg, 7 *Paige*, 265). A guardian had received a

legacy bequeathed to his ward, and, after expending therefrom a small sum in the ward's behalf, had invested the remainder upon bond and mortgage. The report of the Vice Chancellor had allowed the guardian, on his first annual accounting, commissions upon the entire estate, both for receiving and for paying out. This report was modified by the Chancellor so as to allow the guardian one half commissions for receiving the sum in question, and to disallow commissions upon the trust fund that still remained in the hands of the guardian. " The statute," said the Chancellor, " gives a certain allowance by way of commissions, for receiving and paying out moneys by executors, guardians, etc., without specifying how much is to be allowed for receiving and how much for paying out the same. And it may sometimes happen, upon a loss of the fund without any fault on the part of the guardian or other trustee, or upon a change of trustees, that the guardian or trustee may be entitled to compensation for one service and not for the other. In such cases, the language of the statute must be construed with reference to the decision of Chancellor KENT, in Matter of Roberts (3 *Johns. Ch.*, 42), where he first established the allowance, to be made in conformity with the directions of the act of April, 1817; that is, one half commissions for receiving, and one half for paying out the trust money." There are many reported cases which similarly recognize the divisibility of the statutory allowance of commissions, and the propriety of awarding, upon the settlement of accounts, commissions for receiving assets that still remain in the

hands of the accounting party (Ward v. Ford, *supra;* Howes v. Davis, 4 *Abb.,* 71; Laytin v. Davidson, 95 *N. Y.*, 263).

For an *express* determination of the precise question here presented, I have vainly ransacked the law reports of this State; but several of the decisions above cited seem to involve of necessity an *implied* determination, that, in computing the one half commissions for receiving, such assets as formed a part of a decedent's estate at the day of his death, and continue to form a part of it at the time of the accounting, must be valued at the price they were worth in the market when they first came into the hands of the executor or trustee. For, in the cases above cited two propositions are clearly established:

*1st.* That commissions for the receiving and paying out of moneys may justly be claimed by executors, guardians, trustees, etc., who have received and paid out assets never actually converted into money.

*2d.* That an accounting executor, guardian, trustee, etc., may lawfully be granted commissions for receiving such property, even when the property so received remains in his hands precisely as it reached them.

It is a necessary corollary from these propositions that, whenever, upon assets other than moneys, courts have allowed one half commissions for receiving, in advance of any paying out, such commissions have been computed upon estimated values that must, in many instances, have differed greatly from the values of such assets, as subsequently ascertained by actual sale, or as subsequently estimated in fixing

the basis for computation of the one half commissions for paying out.   It is evident, indeed, that, when the trustees of this decedent's estate shall hereafter account for the very securities that are now the subject of consideration, if it shall chance that such securities still remain in their possession, and if they shall ask to be allowed commissions for receiving the same, in advance of any paying out, it will be necessary, for the purpose of computing such commissions, to treat such securities as worth the exact amount of their market value at the time of their reception by the trustees.   What may ultimately prove to be their actual worth to the beneficiaries cannot now be determined.   At some future day they may be converted into money.   They may then have a value even higher than has been assigned to them in the inventory.   On the other hand, the proceeds of their sale may fall far short of the sum that could be obtained for them if they were to-day thrust upon the market.

It would seem, therefore, upon grounds quite apart from those that are furnished by the decisions to which I have referred, that the present value of the securities about to be delivered to the trustees is not the proper sum upon which to compute one half commissions for receiving.   Indeed, there seems to be no more reason for computing, upon such a basis, the commissions for receiving than there is for computing commissions for paying out upon the basis of the value of these securities when they first came into the hands of the executors.   In adjusting commissions for receiving and paying out, such assets of a decedent's

ROWLAND V. MORGAN.

estate as its executor has actually sold and converted
into money, before his accounting, should be valued
at the precise amount realized by their sale.    When
there has been a literal receiving and paying out of
moneys, a literal obedience to the statute can be and
should be observed.    But assets that, at the time of
the accounting, remain unsold, and that have not
been applied to the discharge of debts or legacies, or
otherwise used in the course of administration, may
justly be taken, in the reckoning of what are some-
times called "receiving commissions," at their market
value when received.    And, analogously, whenever
such assets shall have been "paid out," within the
meaning of that expression in the statute, their value
at the time of such paying out will afford the correct
basis for calculating the remaining one half commis-
sions, to which the representative of the estate will
then have become entitled.

I have examined at random several accounts which,
for one cause or another, have occasioned controversy
in our appellate courts, respecting the proper adjust-
ment of the commissions of the representatives of
decedents' estats.    Each of those accounts seems to
have been prepared upon the theory that I have here
approved, and none of them were, for that cause,
subjected to adverse criticism.

For the foregoing reason, I hold that, in computing
commissions upon the securities which formed a part
of this estate when it came into the hands of the
executors—which have since been retained by them
in the exercise of the discretionary authority given
them by the testator's will and which they are now

about to pass over to the trustees—the market value of such securities, at the time they came into the hands of the executors, must be taken as the basis for the one half "receiving" commissions; and the one half commissions for "paying out" must be computed upon the value of those securities at the time the decree shall be entered upon this accounting.