MEACHAM *vs.* STERNES & SHELDON, executors, &c.

Where the deed or instrument creating a trust contains no provision as to the compensation which the trustees are to receive for their services in the execution of the trust, the court of chancery, upon a bill filed against them for an account of the execution of the trust, will allow them the same compensation, by way of commissions, as is allowed to executors and guardians for similar services.

If the trust deed says nothing as to the compensation of the trustees, the law implies an agreement to perform the service for the same allowance which is made by statute to executors, &c. But if the instrument creating the trust fixes the compensation, or declares that none is to be received, or where the trustee, previous to his acceptance of the trust, makes a valid and binding agreement with the cestui que trust as to the compensation which he is to receive, the compensation fixed by the instrument, or by such agreement, will be the rule of allowance to the trustee.

Where the instrument creating a trust declares that the trustee shall receive a compensation for his services, but leaves the amount of such compensation to be settled upon the priciple of a quantum meruit, the extent of such

compensation will depend upon the services to be performed, and the compensation usually allowed or given for similar services by parties under voluntary agreements.

A trustee is entitled to commissions upon sums with which he is charged in consequence of losses arising from his negligence, and on debts due to himself as one of the cestui que trusts; and also on the balance in his hands which he is directed by the decree to pay over to the cestui que trusts.

Where an assignment in trust, for the payment of the debts of the assignor directs the trustee to sell the trust property at such reasonable times as shall seem proper to him, he is not authorized to sell the property at retail and on credit, nor to send it to agents to be sold on commission.

THIS case came before the chancellor upon an appeal by the complainant from so much of the decree of the vice chancellor of the fourth circuit as disallowed the exceptions of such complainant to the master's report, and so much of the decree as disallowed his claim for costs against Esleeck, the original defendant personally. The executors of Esleeck also appealed from a part of the decree overruling exceptions taken by Esleeck to the master's report. The bill was filed by the complainant, R. S. Meacham, as the owner of certain debts due from the firm of J. & H. Meacham & Co. for an account and satisfaction of those debts out of the property of that firm which had been assigned to Esleeck in trust for the payment of their debts; and among other debts a large amount due to himself, or for which he was responsible as endorser.

*Ira Harris*, for the complainant.

*M. T. Reynolds*, for the defendants.

THE CHANCELLOR. The exceptions of the complainant all relate to the commissions allowed to the assignee as a compensation for his services, in the execution of his trust, in addition to his expenses and disbursements; the master having allowed the same rate of compensation which is fixed by law in the case of executors and administrators and guardians. There is no doubt that the rule of the English court of chancery was to refuse to allow any com-

1842.

Meacham
v.
Sternes.

March 1.

pensation to executors, guardians, committees of lunatics, or other trustees, either in the shape of commissions or otherwise, for their personal services in the execution of the trust, beyond their actual expenses and disbursements. This rule, however, did not apply to the case of an executor or other trustee for whose services a compensation was either expressly or impliedly provided in the will, or other instrument creating the trust. The law in England appears to be substantially the same at the present time, except in relation to trustees of East India and West India estates. (*See Lewin's Law of Trusts*, 438.) And such was supposed to be the law of this state previous to the passage of the act of April, 1817, relative to executors, administrators and guardians. (*Laws of* 1817, *p.* 292.) The rule was indeed partially broken in upon by Chancellor Kent in the case of *Green* v. *Winter*, (1 *John. Ch. Rep.* 37 ;) where he allowed the trustee a certain amount per day for his *time* and expenses while engaged in the execution of the trust ; though he refused to allow the additional charge for commissions. He based his decision, in disallowing the commissions in that case, however, upon the English authorities which had decided that the trustee was not entitled to any compensation whatever for his time and personal services. And in the subsequent case of *Manning* v. *Manning*, which came before him in 1815, (*Idem*, 527,) he went the whole length of declaring that the rule of the English court of chancery existed here in its full extent ; and that executors and other trustees were not entitled to commissions or compensation for their services in the execution of their trusts, where no provision therefor was made in the will or other instrument by which the trust was created.

The practice in some of our sister states, however, was different. As early as 1793, in the case of *Granberry* v. *Granberry*, (1 *Wash. Virg. Rep.* 250,) the court of appeals in Virginia decided that an executor was entitled to compensation for his trouble ; and that by custom the allowance was generally fixed at five per cent upon his actual

receipts. And in the case of *Miller* v. *Beverleys*, (4 *Hen. & Munf. Rep.* 415,) which came before Chancellor Taylor in 1809, in a case of a trustee appointed by a deed of trust, he declared that it was inconsistent with natural justice to ask for the services of a trustee and then to refuse to pay him a reasonable compensation therefor. He therefore refused to be governed by the English decisions on this question, and allowed the usual commissions given to executors by the custom of that state.

The act of April, 1817, having authorized the chancellor of this state to settle an allowance or compensation for the services of executors, administrators and guardians, as a fixed and settled rule of compensation to be conformed to in all cases of the settlement of their accounts, Chancellor Kent considered the case of a committee of a lunatic as coming within the equity of the statute. He therefore allowed the committee a compensation, by way of commissions, for his services in the execution of the trust, at the rate fixed by him under the statute. (*Ex parte Roberts*, 3 *John. Ch. Rep.* 43.) I am not aware of any case in which this court has by an express decision applied the same rule of compensation to an ordinary trustee created by deed or will, where no provision was made in the instrument creating the trust to compensate the trustee, for his services. For in such instruments express provision is generally made for a fixed compensation to the trustee ; or at least to allow him to retain a reasonable sum for his care and trouble in the execution of the trust. But in the case of *Van Rensselaer* v. *Bayard and others*, which came before this court, in April 1832, on appeal, but not reported, a commission was allowed to a trustee for certain services not within the ordinary duties of his trust. The question as to his general right to compensation did not, however, arise on that appeal ; that question having been settled by a previous order of the vice chancellor which was not appealed from. The question was afterwards discussed in this court in the case of *Denniston* v. *Bleecker and others*, which came up on appeal from the decision of a

1842.

Meacham
v.
Sternes.

vice chancellor, in April 1834. I suggested, in that case, that the equity of the statute allowing a fixed compensation to executors and guardians for their services, by way of commissions, might probably be extended to the case of other trustees performing similar services, so as to allow to such trustees the'same compensation where the instrument creating the trust was silent on the subject. That case, however, was finally disposed of upon the ground that the trust deed evinced an intention on the part of the person creating a trust to allow the trustees to charge a reasonable compensation for their services, and to retain the same in addition to their expenses and disbursements, and that the accounts rendered by the trustees from time to time should be conclusive as to the reasonableness thereof. It also appeared that the trustees had rendered accounts from time to time charging a commission upon their receipts and expenditures of five per cent.

In the present case the vice chancellor has based his decision, overruling the complainants' exceptions, upon the somewhat equivocal language of the deed of assignment by which the trust was created. The language of that instrument is, that he may in the first place retain and reimburse himself out of the proceeds of the trust property "all costs and charges, damages and expenses" which he may bear, pay, or sustain or be put to, by reason or means of or on account of the execution of the trust. Considering the law as settled that a trustee is not entitled to any compensation for his services unless the same is provided for in the instrument creating the trust, this language may all be properly applied to such costs, damages, charges and expenses as are allowable by the rules of the English court of chancery. But if the equity of the statute allowing a fixed compensation by way of commission to executors, &c. was applicable to the case, then the language of the assignment was broad enough to embrace the legal charges for commissions, as well as the costs, damages and expenses of the trustee in the execution of the trust confided to him.

1842.

Meacham
v.
Sternes.

The question, therefore, appears to be presented for the decision of the court, whether such a trustee is entitled to compensation for his services, within the equity of the act of April 1817 and of the provisions of the revised statutes as to the allowances to be made to executors, &c., and at the same fixed rate, where no provision as to compensation is contained in the deed or other instrument by which the trust is created. Upon a full examination of the subject and in accordance with the principle of the decision of Chancellor Kent, in the case *Ex parte Roberts*, before referred to, I have arrived at the conclusion that the trustee in this case, and other trustees similarly situated, are entitled to the same compensation for their services which is allowed by law in the case of executors, administrators and guardians. I am also pleased to find that the same view of this question was taken by the late Judge Washington of the supreme court of the United States. In the case of *Prevost* v. *Gratz*, in the circuit court of the United States for the district of Pennsylvania, in 1818, the question arose whether a trustee was entitled to commissions for his services in the discharge of his trust. And in delivering the opinion of the court, that distinguished judge says: " Without intending to meddle with the question whether a trustee is entitled to a commission upon the general principles which prevail in courts of equity, we think he is so in this state, under the equity of the act of assembly which allows them to executors, &c. ; and such we understand has been the practice."

It may, therefore, be considered the settled rule, so far as the decision of this court can settle it, that in all cases of trusts of this description, and all other express trusts of a similar nature, where nothing is said in the deed or instrument creating the trust on the subject of compensation to the trustee, for his personal services in the execution of the trust, and where there is no agreement on the subject for a different allowance, that the trustee, upon the settlement of his accounts, will be allowed the same fixed compensation for his services, by way of commissions, as are

1842.

Meacham
v.
Sternes.

allowed by law to executors and guardians ; and to be computed in the same manner. In other words, the court will consider the statutory allowance to executors, administrators and guardians, as the compensation tacitly understood and agreed on by the parties to all trusts, of a similar nature, where nothing appears to show a different agreement or understanding on the subject of compensation. Where the instrument creating the trust, however, fixes a different compensation, or declares that none is to be allowed, or where the trustee, previous to the acceptance of the trust, makes a valid and binding agreement with the cestui que trust as to the rate of compensation to be allowed for his services in the execution of the trust, that of course must prevail. And where such instrument contains an express provision that the trustee shall receive a compensation for his services in addition to his expenses and disbursements, leaving the amount of the allowance to be settled upon the principle of a *quantum meruit*, the amount of compensation must necessarily depend, to a certain extent, upon the peculiar circumstances of each case ; and must be adjusted with reference to what is usually paid by the agreements of parties for similar services.

The complainants' counsel further contends that, if the trustee was entitled to commissions, the master erred in allowing him his half commissions on the monies with which he was charged, as trustee, in consequence of his neglect to collect the same ; and that the trustee was not entitled to commissions on the debts due to himself as one of the creditors of the assignors, nor upon the balance in his hands as reported by the master. I see no principle, however, upon which he should be excluded from receiving commissions upon funds with which he is charged in the account, although he did not in fact receive them. It is certainly a sufficient punishment of the trustee, for his negligence, to compel him to account for the monies which he might have collected, in the same manner as though the same had actually been received by him. And I believe it has been the uniform practice of the courts, since the pas-

1842.

Meacham
v.
Sternes.

sage of the act of April 1817, to allow the executor, administrator or guardian his half commissions upon the whole amount of the debit side of the account against him, whether the amounts for which he was charged were monies actually received by him, or were for funds which he might have received by due diligence. Neither does there appear to be any good reason for depriving the trustee of his half commissions upon the debts due to himself from the assignors, the payment of which was provided for in the assignment. The uniform practice is to allow to the executor or administrator his full commissions for receiving and paying out the funds of the estate, although a part of such funds may have been applied in satisfaction of a debt due to himself from the testator or intestate. The trustee was also clearly entitled to his half commissions upon the balance found due from him by the master's report; which balance he was directed by the decree of the court to pay over to the complainant as the representative or assignee of the preferred creditors, after deducting therefrom the complainant's costs. All of the complainants' exceptions to the report were, therefore, properly overruled by the vice chancellor.

Several of the exceptions taken by the defendant Esleeck to the report of the master relate to property belonging to him as trustee, under the assignment, which property has been lost either through his gross negligence, or because he sold it, on a credit, to persons who afterwards failed or were originally irresponsible. By adverting to the assignment it will be seen that it was a general conveyance of all the stock trade in and debts due to the assignors, in trust to sell the merchandize, and collect the debts due to the firm, and out of the moneys to be raised thereby as the proceeds of the assigned property, to pay the debts due from the firm in the order of priority specified in such assignment. Although the assignment provided that the property shall be sold by the trustee in such manner and at such reasonable times as should seem proper to him, the very nature of the trust precluded the idea that he should

have the right to sell the property at retail on credit, or to send it to different parts of the United States to be disposed of by others on commission. He was, therefore, properly charged with the loss upon the two pianos sent by him to Norfolk in the spring of 1832, and which he neglected to attend to for more than six years; and with the loss of the three sent to Atherton, at Philadelphia, about the same time, and who subsequently failed. And he was also chargeable with the loss upon the bill of hardware sold to Johnson, on a credit and without security, in the summer of 1832. For it was probably lost by his neglect to collect the amount when it became payable, even if he was justified in retailing the goods assigned, upon credit, in the the ordinary mode of selling merchandize in the course of trade.

It was moreover a breach of his duty as a faithful assignee for the benefit of creditors to retail the property in this way, upon credit. For the creditors were entitled to have the assigned property converted into money and applied to the payment of their debts without any unnecessary delay. And the assignment itself would have been clearly fraudulent if the assignees had in terms directed their assignee to dispose of the property in the manner in which it was disposed of by the trustee in this case; they being at the time of the assignment in failing circumstances and making this assignment of all their partnership effects in trust to pay their debts. It is not improbable that this mode of disposing of the property was in accordance with the wishes of the assignors. But that cannot protect the trustee when he is called upon to account, by the creditors for the payment of whose debts the assignment professes or purports to have been made. The first, second and third exceptions of the defendant were therefore properly overruled. The two notes of Schuyler Hodges and the Vermont notes taken upon the compromise of the Rogers' debt, appear to have been lost, or left uncollected, by the gross negligence of the trustee. And there was equal negligence in relation to the piano in the

hands of Hewit & Co. of Boston. Neither does there appear to be any excuse for the neglect of the trustee to collect the balance of the debt of Higgins & Co. The defendant in his examination did not pretend that they denied their liability for the residue of the debt, at the time they paid him $140 on account thereof ; nor does he give any excuse whatever for his neglect to collect the balance. The decree appealed from was therefore right in disallowing the fourth, sixth, ninth, twelfth and fourteenth exception of the defendant.

But the seventh exception, which relates to a supposed balance left uncollected on the Cobb debt, appears to have been well taken. The defendant in his examination stated that the amount of the account charged upon the books of the assignor against Nathan Cobb, of Chitteningo, was disputed by Cobb. And he settled it for the sum of $375,21 ; which amount was received and credited by the trustee in his accounts with the trust fund. In the absence of any proof that the other $59 charged upon the books against Cobb was actually due, I think the trustee must be deemed to have acted in good faith in receiving the sum admitted by Cobb to be justly chargeable against him, in full satis faction of the claim. This $59, and the interest thereon as computed by the master, must therefore be deducted from the amount decreed to be paid.

The eighth, eleventh and thirteenth exceptions are defective in form ; but the complainants' counsel, on the argument, consented that they should be considered in the same manner as if the defendant had in one exception objected to the disallowance of the charges of Esleeck & Spencer for the professional services charged in the debit side of his account against the trust estate. In any form in which the question can be presented, however, the exceptions are not well taken ; as the services referred to were not proper charges against the trust estate. The services were for the personal benefit of the assignors only ; and the trust estate assigned for the benefit of other creditors could not be liable therefor, unless there was a balance

due to the assignors sufficient to satisfy the same, after paying all the debts provided for in the assignment.

The fifteenth exception relates to the missing piano received from Meacham & Pond. I think the evidence shows that this piano was among those sent to the hardware store under the care of the assignee, and that he was bound to account for it ; or at least to show what had probably become of it. It seems to be impossible that an instrument of the size and value of the one under consideration should have thus strangely disappeard without gross negligence on the part of some one. It appears to be clear that one instrument is to be accounted for to make up the requisite number. And in the absence of any explanation on the part of the trustee, I think the master was right in charging him with the value of the piano. The only way to account for its disappearance is to suppose the trustee has sold it to some one and forgotten to charge himself with the amount received therefor in his account with the trust estate. This exception to the report was therefore properly overruled.

The 18th and 22d exceptions, which relate to the computation of interest by the master, I understood to be abandoned by the counsel for the defendant upon the hearing of the appeal. The interest is charged on both sides of the account down to the date of the report ; which certainly is the most favorable mode of computing interest for the trustee, who has had a considerable balance in his hands for several years, which should have been paid over to the creditors entitled to it long since.

The nineteenth and twenty-first exceptions of the defendant relate to a compensation by way of commissions claimed by him, beyond the allowance fixed by the revised statutes in the case of executors, &c., and also to a further claim of a gross sum of $2000 for his services in executing the trust. The grounds upon which I have based my decision sustaining the disallowance of the complainant's exceptions, preclude the allowance of any further compensation to the trustee in this case than that which is allowed

by law to executors for the performance of similar servi- 1842.
ces. The duties which the trustee was required to per- Meacham<br>v.<br>Sternes.
form in this case, under the deed of assignment, were pre-
cisely the same as those which are to be performed by an
executor or administrator in ordinary cases; to wit, to
convert the personal chattels into money by a sale thereof,
and to collect the debts due to the estate, and pay the pro-
ceeds over to the creditors without any unreasonable de-
lay. And no reason is at present perceived why a greater
compensation should be allowed in one case than in the
other. I admit the compensation fixed by the statute is
not a very liberal one, considering the risks to which ex-
ecutors and other trustees are exposed even when they are
the most vigilant in the discharge of their duties. But
the allowance is as great as my learned predecessor and
the legislature of the state have deemed consistent with
the rights of creditors and others who are interested as ces-
tuis que trust.

Both parties are dissatisfied with the decision of the vice
chancellor in relation to costs. But taking all the circum-
stances of the case into consideration, I think he came
to the correct conclusion. The trustee does not appear to
have intentionally violated his trust; but has rather erred
in permitting the assignors to manage the assigned proper-
ty in their own way, for the purpose of obtaining a greater
price therefor, instead of converting it at once into mon-
ey, either by a public sale or by disposing of it at private
sale for cash. The result, as is generally the case where
the trustee suffers the trust to remain unexecuted for any
considerable time, is a loss to the defendant, and attended
by an expensive litigation. Where there has been such
negligence, however, on the part of the trustee as this
case exhibits, and where the expense in the master's office
principally arises out of such negligence, he may think
himself fortunate if he escapes without being personally
charged with the costs of the opposite party, instead of
being left merely to bear his own expenses of the litigation.

With the slight modification of the decree in the mat-

ter of the seventh exception of the defendant, the decree must be affirmed ; without costs to either party, as against the other, on these appeals.