NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—
June, 1882.

## MATTER OF ROOSEVELT.*

*In the matter of the judicial settlement of the third an-
nual account of* JAMES A. ROOSEVELT, *surviving trus-
tee, etc., of* JAMES I. ROOSEVELT, *deceased.*

The act of 1866 (ch. 115), amendatory of 2 R. S., 94, § 66, and which ex-
pressly authorized the Surrogate's court to grant commissions to testa-
mentary trustees, was extinguished by L. 1880, ch. 245; but this ex-
tinguishment did not deprive the Surrogate's court of power to allow
such commissions,—testamentary trustees being within the equity of

---

* Seè Meeker *v*. Crawford, *ante*, p. 450; Scovel *v*. Roosevelt, *ante*, p. 121;
Roosevelt *v*. Roosevelt, *ante*, p. 264.

the statute, 2 R. S., 93, § 58, relating to the compensation of executors and administrators, and the right to grant commissions being an incident to the jurisdiction over the accounting.

It was the evident purpose of chapter 18 of the Code of Civil Procedure to give to the Surrogate precisely the same authority in reference to testamentary trustees, as that with which he is invested as regards executors and administrators. Authority to allow commissions to such trustees is *implied* in title 6 of that chapter.

The fact of one's reception of commissions as executor is not, *ipso facto*, a bar to his claim for commissions, as trustee, upon the same fund.

Where a separation of the two functions of executor and trustee is clearly intended by a testator, and has been actually effected, double commissions may be allowed to one person acting in both capacities.

The question whether trust duties enjoined by a will are a mere enlargement of executorial functions, or involve the existence of a trustee as such, may be tested by a consideration of the effect of the resignation or removal of the executor.

The uniform construction of statutes of this state, awarding commissions for " receiving and paying out " moneys, is that one-half is deemed to be given for the reception, and one-half for the disbursement thereof.

The testator, who died in April, 1875, by his will nominated A., B. and C., as " executors thereof and trustees under the same;" of whom A. and B. qualified, C. omitted to qualify, and B. died in February, 1878. By the fifth clause, testator gave to his executors the residue of his personalty, in trust to divide equally, and set apart for investment, in the names of the executors and trustees, shares for his surviving children, respectively; to receive the income of each share, and apply the same to the use of the several children, for life, and, upon the death of each, to transfer the share to his or her issue; and, in case any child should die before testator, leaving issue, to hold such child's share, as trustees, in trust to receive the income, and apply it to the use of such issue during minority. By the sixth clause, testator gave the residue of his realty to his executors, " as trustees in trust," to receive the rents, etc., and apply them substantially in the same manner as before provided concerning the income of the personalty. Three adult children survived testator. In December, 1876, the executors accounted, *as such*, for the personalty which had come into their hands, and also *as trustees* for the *rents* of the realty. Upon the settlement of that account, they were awarded full commissions, both upon the *capital* of the personalty then ready to be set apart for the three trusts, and upon the entire *income* of the personalty. *As trustees*, they were allowed, also, commissions upon the income of the trusts of realty. The decree directed the accounting parties to divide the estate in their hands, amounting to over $1,200,000, with the exception of one item, into three parts, and invest the same " in the names of the said executors as trustees." for the children, respectively. The executors divested themselves, as such,

of the securities, making formal assignments thereof to themselves, as trustees, for the three trusts, and kept the accounts relating to the same separate from each other, and from those relating to the balance of the estate. After B.'s death, A. accounted in March, 1878, and in March, 1881, *as trustee;* and in November, 1881, he accounted *as executor,* for assets retained in that capacity. Upon the settlement of the third annual account, application was made for an allowance to A., and to the representatives of B., of commissions *upon the corpus* of the real estate, and, *as trustees,* upon the capital of the personal trusts. *Held,*

1. That the court had jurisdiction to allow the commissions of the testamentary trustees, notwithstanding the repeal, in 1880, of Laws 1866, ch. 115.
2. That A. and B. were "testamentary trustees," within the definition of Code Civ. Pro., § 2514, the trusts executed by them being separable from their functions as executors.
3. That a proper case was presented for an allowance of trustees' commissions, a separation of the functions of executor and trustee having manifestly been intended by the testator, as well as effected pursuant to a decree of the court.
4. That each of the trustees was entitled, as such, to one-half commissions (viz. : for receiving), upon the entire capital of the personal, and also of the real trusts.

APPLICATION for allowance of commissions to testamentary trustees, upon a judicial settlement of their account. The facts appear sufficiently in the opinion.

DE WITT, LOCKMAN & KIP, *for trustee*

BARTLETT, WILSON & HAYDEN, *for Frederick Roosevelt.*

KURZMAN & YEAMAN, *for Charles Y. Roosevelt.*

PEABODY, BAKER & PEABODY, *for Marcia O. R. Scovel.*

CHARLES F. CONNOR, *special guardian.*

THE SURROGATE.—This is an application for the allowance of commissions to James A. Roosevelt (whose account as surviving trustee of decedent's estate has recently been filed in this court), and also to the repre-

sentatives of his deceased co-trustee, Theodore Roosevelt.

By the will of the testator, these two gentlemen and John Q. Jones, or such of the three as might qualify, were named as "executors thereof and trustees under the same." The fifth clause of the instrument gives to his executors all the testator's personal estate not otherwise effectually disposed of, in trust, to divide the same into as many equal shares as he may have children living at his decease, to set apart such shares for investment in the names of his executors and trustees, for each of such children respectively, to receive the interest and income of such shares, and to apply the same to the use of such children respectively, during their natural life, and, upon the death of each of them, to assign and transfer his or her share to his or her issue then living, according to their stocks. The fifth clause of the testator's will further provides that if, during his own life-time, any child shall die leaving issue, such issue shall take the share of their parent, but that, during their respective minorities, the same shall be held for their benefit by the executors, as trustees, in trust to receive the income thereof, and apply the same to the use of such issue, respectively, during their respective minorities. By the sixth clause of the will, all the real estate of the testator, not otherwise effectually disposed of, is given to his executors, "as trustees, in trust" to receive the rents, issues, and profits thereof, and apply the same as is therein specifically directed. These directions are substantially the same as are provided in the previous clause, for the disposition of the personalty.

The testator died in April, 1875. Three children sur-

vived him, all of whom had attained their majority at his death. Soon after the probate of his will, James A. Roosevelt and Theodore Roosevelt qualified as executors and trustees. Mr. Jones never qualified.

In December, 1876, the executors accounted as such, for the personal estate which had come into their hands, and also as trustees for the rents, issues and profits of the realty. Upon the settlement of that account, they were awarded, as executors, full commissions, both upon the capital of the personalty, which was then ready to be set apart to the trusts for the three children, and upon the entire income of the personal estate. As trustees, they were also allowed commissions upon the income of the trusts of realty. They have as yet received no commissions whatever upon the corpus of the real estate, and none, in their capacity as trustees, upon the capital of the personal trusts. To these commissions they now assert the claim which is the subject of the present contention.

The three trusts in question were duly set up as directed by the decree, except that certain assets valued at about $100,000 could not be immediately assigned, and the executors, as they were directed to do, retained the same for future disposition.

The decree provided that, with this exception, the estate then in the hands of the executors, valued at about $1,200,000, should be divided into three parts for the three children of the testator, and should be invested "in the names of the said executors as trustees," for each of such children respectively. The executors thereupon proceeded to divest themselves as executors of all the securities, apportioning the same to the respective trusts

equally, and making separate formal assignments thereof to themselves, in their capacity as trustees of each of the three trusts.

Since the entry of that decree, the investments of each of such trust funds have been made in the name of the trustees thereof, as such trustees, and all the accounts relating to those trusts, respectively, have been kept separate and distinct from each other, and from the accounts relating to the rest of the testator's estate. One of the executors and trustees, Mr. Theodore Roosevelt, died in February, 1878. Since that date, there have been two annual accountings by his survivor. One of these was made in March, 1878, and the other in March, 1881. In November, 1881, James A. Roosevelt made a second accounting, as surviving executor, for such portion of the estate, and for such portion only, as he had continued to hold in that capacity.

It has been strenuously insisted, by the counsel for the *cestuis que trust*, that the trustees have already received compensation fully commensurate with their labor and responsibility. It has, on the other hand, been as earnestly contended by opposing counsel, that the amount hitherto allowed these gentlemen has been but a meagre reward for the performance of duties at once delicate and onerous.

Which of these conflicting views is the more reasonable and just is foreign, however, to this discussion, for reasons which will presently be made apparent.

There are several questions at issue in this proceeding: 1st. Has this court jurisdiction under the existing law to allow commissions, at all, to testamentary trustees? 2d. If it has such jurisdiction, should it ever allow to

persons who have received commissions as executors, additional compensation as trustees under the same will? 3d. If such allowance is found to be under any circumstances legal and proper, is it demanded by the particular circumstances of the case at bar? 4th. If commissions are to be here awarded, what should be the basis of computation? These questions will be considered in their order.

First. Is the Surrogate now authorized to direct the payment of commissions to testamentary trustees, at the time of their accounting as such?

Prior to the year 1850, it is indisputable that this court had nothing whatever to do in respect to any of the incidents of a trustee's accounting. It was by chapter 272 of the laws of that year—entitled "An act to provide for the settlement of the accounts of testamentary trustees"—that these matters were first brought within the jurisdiction of the Surrogate.

The statute just referred to was in form an amendment of section 66, title 3, chapter 6, part 2, of the Revised Statutes. That section declared that "the last preceding section" (which related to the accountings of executors) "should not extend to any case where an executor was liable to account to a court of equity, by reason of any trust expressly created by any last will or testament."

The amendatory act of 1850, *supra*, provided that any testamentary trustee, or executor, or administrator with the will annexed, might "from time to time render and finally settle his accounts before the Surrogate, in the manner provided by law for the final settlement of the accounts of executors and administrators." It further

declared· that a final decree upon such accounting should have "the same force and effect as the decree or judgment of any other court of competent jurisdiction on the final settlement of such accounts, and of the matters relating to such trust, which were embraced in such accounts, or litigated or determined on such settlement thereof."

This statute of 1850 did not specify the amount of commissions grantable to testamentary trustees, nor make any express provision for the allowance by the Surrogate of any commissions whatever. Whether a grant of power to award such commissions was a necessary incident of the authority accorded by that statute is a matter which will be hereafter considered.

There was no further legislation upon this subject until 1866, when an additional amendment was made to section 66 of the Revised Statutes, *supra* (see ch. 115, Laws 1866). This amendment expressly provided that, upon the accounting of testamentary trustees, the Surrogate should "allow . . . the same compensation . . . by way of commissions, as was allowed by law to executors and administrators." That allowance had, long before, been fixed by section 58, title 3, chapter 6, part 2 of the Revised Statutes, and, save in particulars not necessary to be here considered, has remained unchanged to this day.

Now it is claimed that each and all of the foregoing provisions, for the accounting and compensation of testamentary trustees, have been absolutely blotted out of existence by the general repealing act of May 10, 1880, and that, although the present Code of Civil Procedure has in the main rebuilt the structure thus destroyed, it

has failed to re-establish the authority of the Surrogate to award to such trustees any compensation whatever. The statute of 1866 (ch. 115) was not in terms repealed by that of May 10, 1880, nor was the act of 1850 (ch. 272). But section 66 of the Revised Statutes, to which they both attach as amendments, was itself absolutely extinguished.

This naturally suggests the inquiry whether the repeal of an act, by reference to its original title or description, operates also as a repeal of other acts by which it has been amended. The general doctrine of statutory construction applicable to this subject need not, however, be considered in the present case, as the repealing act in question establishes its own standard of interpretation. Section 2 of that act (ch. 245, Laws 1880) declares that the repeal of the portions of the Revised Statutes specified in the next preceding section (and in that section there is a distinct specification of section 66) effects also the repeal "of all of the existing laws which expressly amend the portions of the Revised Statutes so repealed, by adding to or otherwise altering the text thereof."

It is provided also by section 3 of the repealing act in question, that, except as otherwise provided in section 2 just quoted, "the repeal of any provisions of the existing laws which have been amended by a subsequent provision of those laws not expressly repealed by this act, does not affect the subsequent provision." Now, both the act of 1850 and that of 1866 are "subsequent provisions" amending a law which is abrogated by the general repealing statute. Are those two amendatory acts within the protection of section 3, or are they, on the other hand, under the ban of section 2? Very manifestly, the

latter is the case, unless they are saved by force of the phrase, "by adding to or otherwise altering the text thereof."

Either those words are idle, meaningless and worse than unnecessary, or else they contain a plain implication that certain provisions of the Revised Statutes have been amended in some other fashion than "by adding to or otherwise altering the text thereof." And such provisions, if any there be, are kept alive by section 3.

Now, in a broad and general sense, whenever a statute has been so dealt with that it has ceased to be precisely the same as it was originally, such statute may fairly be said to have been altered. But, in a more restricted and exact sense, it may, perhaps, be true that the utter extinguishment of all its original words by the substitution of others not simply modifying its meaning, but utterly reversing it, is somewhat infelicitously and even inaccurately described by styling it an "alteration." In technical language it is of course an "amendment," but it may be doubted whether it is such an amendment as is made "by adding to or otherwise altering the text."

If these words restrict the scope of the general repealing statute in the way that has been suggested, the acts of 1850 and 1866 are of course unaffected by the destruction of section 66 ; for the slightest reflection will make it apparent that, only in the most general and comprehensive sense, can the two amendatory statutes be said to add to or otherwise alter the original text.

While this suggestion seems to me well entitled to consideration, in view of that rule of construction which requires that, if possible, some effect must be given to

every word in a statute, I am inclined to think that this oft-quoted phrase, "by adding to or otherwise altering the text thereof," must be treated as surplusage, and that, accordingly, both the act of 1850 and that of 1866 have ceased to exist. This view rests upon the theory that the words in question were inserted by the drafts-man out of abundant caution, though precisely what he was abundantly cautious about is not apparent. If these acts amendatory of the Revised Statutes are no longer in force, it is by the provisions of the Code of Civil Procedure that the Surrogate's authority must now be tested.

Chapter 18 of that Code is devoted exclusively to the subject of " Surrogates' courts and proceedings therein." It consists of seven titles, one of which (title 6) concerns nothing except the " provisions relating to a testament-ary trustee." These provisions are very broad and sweeping in their character. They disclose an evident purpose on the part of the legislature to give to the Sur-rogate precisely the same authority in reference to tes-tamentary trustees, with which he is invested as regards executors.

It will, indeed, be found, upon critical examination, that, with scarcely an exception, every section which relates to the accounting of an executor, and the settle-ment of a decedent's estate, is elsewhere repeated, *mutatis mutandis*, in reference to testamentary trustees.

The sections relating to executors are included be-tween section 2722 and section 2748. Those relating to trustees begin at section 2802 and end at section 2820. Among those provisions touching executors which are in terms made applicable to the case of trustees are two,

which, for the purposes of this discussion, are deserving of special consideration. Section 2811 provides that section 2736 "applies to and regulates the like matters where a testamentary trustee accounts." The section, thus made a part of the procedure of a trustee's accounting, declares that, where the value of an estate is as much as $100,000, "each executor is entitled to the full compensation allowed by law to a sole executor or administrator," unless there are more than three executors, in which event the commissions of three must be divided.

If the position of the objectors herein is correct, the application of this section to testamentary trustees is discovered to be idle and absurd. The following would be the interpretation of the statute : "If there be two trustees, they shall be paid double the nothing which could be claimed by one trustee, and three trustees shall receive three times as much nothing as one trustee, but three times nothing is the maximum sum which can be allowed, whatever the number of the trustees who are entitled to claim commissions." Surely this section should not receive a construction so ridiculous, unless it is manifest that it can bear no other.

So, too, section 2811 makes applicable to testamentary trustees the provisions of section 2737, to the effect that, where a will gives specific compensation to an executor, he must formally renounce his claim to that compensation, to entitle himself to the statutory allowance. Now, if the claim of these objectors is well founded, this section, so far as it relates to testamentary trustees, would read as follows : " Where the will provides something as specific compensation to a trustee, he must formally renounce that something, in order to entitle

himself to an allowance of nothing, in its place and stead."

It is scarcely conceivable that the legislature has deemed it advisable to impose such stringent conditions upon the allowance of nothing as a reward for fiduciary service. If, upon a study of the whole plan and purpose of the Code, there can fairly be given to these sections an interpretation which does not involve such absurdities, that interpretation ought surely to be accepted.

After careful consideration, I am fully persuaded that the Surrogate's power to allow commissions to testamentary trustees is implied in the provisions of title six already referred to. I think, indeed, that, ever since the act of 1850 went into effect, the Surrogate has had such power, and that it·was not, as these objectors claim, first accorded to him in 1866. The act which, in that year, came upon the statute book, cannot be justly regarded as any legislative intimation that, but for its enactment, the Surrogate would lack jurisdiction in the premises. Whether its object was to set up a barrier against possible grants of allowances in excess of the amount theretofore sanctioned by the supreme court, or whether its main excuse for being was its sensible provision for the apportionment of commissions upon small estates, and its reference to the subject of commissions in general was simply incidental, and for quieting all doubts, reasonable and unreasonable, as to the Surrogate's authority, need not be here discussed.

I have made a fruitless search through the reports, to find any determination or even any intimation of opinion as to the power of Surrogates, between the years 1850 and 1866, to award commissions to testamentary trustees.

The absence of such decisions is not singular, when it is considered that, not until 1867, were compulsory accountings of such trustees brought within the jurisdiction of the Surrogate (ch. 782, *Laws* 1867).

During the interval from 1850 till 1866, that officer could deal with voluntary proceedings only; and even as to these the trustee might, at his own option, give account of his stewardship either to the supreme court or to the Surrogate. So far as this county is concerned, our records show that the latter tribunal has seldom selected, and that many years elapsed after it had acquired jurisdiction, before it was called upon to exercise it.

The objectors in this proceeding are not correct, however, in saying that no commissions were in fact awarded by the Surrogate prior to 1866. Our records disclose many instances where the allowance of commissions to testamentary trustees was made a part of the decree upon their final accounting. Indeed, it would appear that such was the general practice.

It is quite true, as counsel have insisted, that this court has only such jurisdiction as the legislature has expressly conferred upon it (Code, §§ 2472, 2481). But is there not, after all, a complete warrant of law, for the exercise of the power which is here invoked ? With the exception of the act of 1866 above referred to, there has never been upon the statute books of this State, so far as I can discover, any distinct and express legislative sanction for the award, by this tribunal or any other, of commissions to testamentary trustees. And yet, ever since the decision of Chancellor WALWORTH, in 1842 (Meacham *v.* Sternes, 9 *Paige*, 398), the court of chancery and,

from the time of its abolition, the supreme court, have been in the constant practice of making such allowances. And in so doing, they have not, as will presently appear, regarded themselves as exercising any general equity powers. They have, on the contrary, based their action upon the authority of statutory law. It was provided by an act of 1817 (*Laws* 1817, p. 292), "that it shall be lawful for the court of chancery, in the settlement of the accounts of guardians, executors and administrators, to make a reasonable allowance to them for their services, and that, when the rate of such allowance shall have been settled by the chancellor, it shall be conformed to, in all cases of the settlement of such accounts."

The rate of compensation was thereafter fixed by the Chancellor, and promulgated in an order issued on October 16, 1817 (3 *Johns Ch.*, 630). This act was repealed in terms by the general repealing act which accompanied the revision of the statutes (3 *R. S.*, 1st ed., p. 139). In its place, appears the provision which has been already referred to (§ 58, title 3, ch. 6, part 2, R. S.), which adopts the former rule in chancery, and declares that "on the settlement of the account of executors or administrators, the Surrogate shall" make certain specified allowances.

Now this was the only law in force relating to this matter, when the case of Meacham *v.* Sternes (*supra*), was decided by the Chancellor. In the course of his opinion sustaining the Master's award of compensation to a trustee, the Chancellor says : "The question, therefore, appears to be presented for the decision of the court, whether such a trustee is entitled to compensation for his services, within the equity of the act of April, 1817,

and of the provisions of the Revised Statutes as to the allowances to be made to executors, etc.  .  .  .  Upon a full examination of the subject  .  .  .  I have arrived at the conclusion that the trustee in this case and other trustees similarly situated are entitled to the same compensation for their services which is allowed by law in the case of executors, administrators and guardians." He declares that it may therefore "be considered the settled rule," that "upon the settlement of his accounts" the trustee will be allowed the "same fixed compensation for his services, by way of commissions, as are allowed by law to executors and guardians;" that the commissions will "be computed in the same manner," and that the statute allowance will be deemed "the compensation tacitly understood and agreed on by the parties to all trusts of a similar nature," where nothing appears to the contrary. From the doctrine of this case, there has never been any expression of judicial dissent.

If I construe this decision aright, it holds that the right of testamentary trustees to an allowance of commissions rests upon the same foundation as that of executors, administrators or guardians.   In other words, it substantially holds that section 58 of the Revised Statutes should be construed as if trustees were expressly included in the class of persons entitled to an allowance for fiduciary service.   Such has been the practical construction of that section for fifty years, and the legislature have never, meantime, sought to disturb it.

Assuming, then, upon the authority of this decision, and the settled practice of the courts, that even before 1866 trustees could lawfully claim commissions, where could such claim be enforced? The language of the statutes,

as well as of the decision above quoted, accords with what seems to me the common sense answer to this question. Their commissions were grantable by the tribunal wherein their accounts were judicially settled.    Note the language of the statutes and of the Chancellor's decision.    The act of 1817 declares that the allowance, when fixed by the Chancellor, shall be conformed to " in all cases of the settlement of such accounts."    The existing statute as to executors (section 58, *supra*) declares that "on the settlement of the account" the allowance of commissions shall be made.    The Chancellor says (in Meacham *v.* Stearnes, *supra*) that " upon the settlement of his accounts," the trustee will be awarded his compensation.

All this goes to show that the deduction of commissions, if any have been earned, has always been regarded as a necessary incident of judicial settlements of trust accounts.    Indeed, the doors of this court were thrown open to testamentary trustees for the very purpose, no doubt, of securing for them an easier and speedier mode of final accounting, than had been previously afforded.

But this manifest object of the statute of 1850, and of the corresponding provision of the present Code, is strikingly inconsistent with the relegation of such trustees to the supreme court, for the determination of their claims for compensation.    I hold, therefore, that, at the moment when this court obtained the jurisdiction over the accounting of testamentary trustees which was given to it by the statute of 1850, it acquired the same authority to make allowances in the premises as had theretofore been enjoyed by the supreme court.    It need scarcely be added that all that has been said touching

the powers of the Surrogate, under the act of 1850, applies, *a fortiori*, to the existing situation. Step by step, the jurisdiction of this court over testamentary trustees has been enlarged, until, to-day, no intention is more clearly evinced in the entire eighteenth chapter of the Code than that of putting such trustees, in all respects, on precisely the same footing before the Surrogate as are executors and administrators.

Second. It must next be determined whether the fact of one's reception of commissions as executor is, *ipso facto*, a bar to his claim for commissions as trustee.

Section 2514 of the Code declares that the expression "testamentary trustee," as used in the Code, includes, among other persons, an executor designated by a will, when such executor "is acting in the execution of a trust created by the will, which is separable from his functions as executor." This is a distinct recognition that the two functions may be united in the same person. Indeed, the current of decisions shows that the courts have repeatedly so held. Now, in the absence of any prohibition by law or by the terms of a will itself, it would seem to be an immaterial inquiry, in passing upon the claim for commissions by a trustee, as such, whether he had or had not exercised also the functions of an executor. So thought the court of appeals in the case of Hurlburt *v.* Durant, fully reported in the *New York Daily Register* of March 9, 1882. It seems idle to cite other authority, in view of this very recent and explicit declaration of our highest court. The decision is utterly inconsistent with the doctrine that double commissions are under no circumstances allowable.

Third. Next arises the inquiry whether, upon all

the facts of the case at bar, the claim of commissions, which is here set up in behalf of Mr. Roosevelt's trustees, can be maintained.

The case last mentioned may fairly be deemed almost as conclusive upon this point, as upon the one in support of which it has been already cited. In pronouncing the unanimous opinion of the court of appeals, Judge DAN-FORTH says, after referring to the terms of the will: "It is manifest that the testator intended to create a trust; . . . . he did not leave the legacies to be paid by the executor in the course of administration, and out of the general assets, but appointed him as trustee to hold and re-invest, during the continuance of the trust, the sum of $275,000 represented by bonds and mortgages ; and while it may be conceded that, so long as these characters were co-existent, commissions might be retained as executors only, it is otherwise where there has been a separation of duties performed in the two capacities."

After commenting upon the decision of Drake v. Price (5 N. Y., 430), and referring, with undisguised approval, to the views expressed in Judge PAIGE's dissenting opinion in that case, Judge DANFORTH adds (in considering the circumstances under which a separate commission as trustee might be allowed an executor), "no doubt a separation by order or decree of a court or Surrogate, as in Ward v. Ford, and In re Carman, would be most satisfactory evidence of the real relation of the party to the fund." Both of the cases thus approvingly mentioned arose in this county, and were decided by Surrogate CALVIN (Matter of Carman, 3 Redf., 46 ; Ward v. Ford, 4 Id., 34). They contain an able review

of all the authorities bearing upon the subject, and their conclusions seem to me to be sound.

Indeed, those conclusions were impliedly indorsed by the court of appeals, even before its recent decision in Hurlburt *v.* Durant.

In Hall *v.* Hall (78 *N. Y.*, 535), that court held that certain persons who had been awarded commissions as executors were not, under all the circumstances of that particular case, entitled thereafter to commissions as trustees. There is not, however, the faintest suggestion, that the reception of commissions as executor is, of itself, a bar to any subsequent claim as a trustee. On the contrary, the only inference which can fairly be drawn from the language of Chief Judge CHURCH is that, in the judgment of the court of appeals, double commissions may properly be awarded, where the will contemplates a separation between the functions of executor and trustee, and such separation has actually taken place. This is apparent from the fact that a distinction is drawn by the court between the case then before it, and the two cases already referred to, as decided by Surrogate CALVIN.

In those instances "where executors have been allowed to retain commissions as trustees," says Judge CHURCH (78 *N. Y.*, 539), "there has been a separation of the duties performed in the two capacities." And thereupon the learned judge calls attention to the fact that, in the case of Carman (*supra*), the fund had been ordered, by decree of the Surrogate, to be set apart and kept invested for the beneficiary; that such separation had been made; that a bank account had been opened by the trustees, as such; that the trust funds had been

kept apart from the general funds of the estate, and that the dealings of the trustees with such trust funds had not been included in their accounting as executors.

The case of Ward *v.* Ford (*supra*), is also referred to by Judge CHURCH as being one in which there had been a final judicial settlement upon an executor's accounting, a direction in the decree that the persons who had been executors should retain the funds in their hands as trustees, and an actual compliance on their part with such direction.   On applying, to the facts of the case at bar, the doctrine of the authorities which have been cited, it will appear that there has here been as thorough and effectual a separation of the functions of executor and trustee as could well be imagined.   Such separation was designed by the testator and directed by the court, and such separation has been in fact accomplished.   In support of this position little need be added to the statement of facts at the beginning of this opinion.

It seems to me that, in its whole scheme and spirit, the will contemplates a speedy termination of the executorial duties and establishment of the trusts.   As it was the purpose of the testator to appoint the same persons both as his trustees and as his executors, it is not strange that he sometimes used the two words interchangeably, as a mere designation of persons, and without literal exactness.   But on the whole, his purpose is as ·clear and definite as words can make it.   And that purpose has been accomplished.   With unimportant exceptions, the entire corpus of the estate, applicable to the trusts, has been actually assigned to them.

Whether a separation of the two functions of exec-

utor and trustee has been intended by a testator, and whether it has been in fact effected, are sometimes questions of doubt and difficulty, and their solution may involve distinctions somewhat shadowy and refined.

But the present case is, in my judgment, free from such perplexities. It does not essentially differ from that of Quackenboss *v.* Southwick (41 *N. Y.*, 117), in which the court of appeals held that an executor, upon whom were enjoined by the will certain distinct and separate duties as trustee, might be removed from the latter office, and still remain in the full enjoyment of the other.

Perhaps, indeed, there is no better mode of presenting the question whether, in the case of a person named as an executor, the trust duties enjoined by the will are a mere enlargement of executorial functions, or, on the other hand, involve the existence of a trustee as such, than to consider what would be the effect of the person's resignation or removal.

In the present case, so completely have the trusts been divorced from the body of the estate that, within sections 2817 and 2819 of the Code, Mr. James A. Roosevelt might be removed as the trustee of Charles, or Frederick, or Marcia, for mismanagement of one of the three trusts, and not be thereby dislodged, either from his executorship, or from his control of the other trusts. So, too, he might be removed from the executorship, and his authority as trustee would remain unaffected (§ 2688).

My conclusion, therefore, is that persons named by Mr. Roosevelt as his executors are now entitled, as trustees, to such commissions as could have been lawfully

claimed by any other persons similarly exercising the functions of testamentary trustees.

Fourth. The basis upon which commissions should becalculated is the only matter which remains to be considered.

The courts of this State have uniformly construed statutes awarding commissions for "receiving and paying out" as if they granted one-half of such commissions for receiving and the other half for paying out (Matter of Kellogg, 7 *Paige*, 265 ; Matter of Roberts, 3 *Johns. Ch.*, 43 ; Howes *v.* Davis, 4 *Abb. Pr.*, 71 ; Ward *v.* Ford, 4 *Redf.*, 43).

It may be remarked, in passing, that, upon the strength of these authorities, it would appear that the trustees, in the case at bar, may have become entitled, as such, to one-half commissions when the trusts were first established. And, as this was before the Code went into operation, it may be claimed, with some show of reason, that their right to such commissions became vested before the act of 1866 was repealed, and was therefore in no manner affected by such repeal (Code, § 3352).

For the reasons above set forth, I find that each of the trustees is entitled to one-half commissions upon the entire capital of the personal trusts, and upon all the realty as well (Wagstaff *v.* Lowerre, 23 *Barb.*, 223 ; Matter of De Peyster, 4 *Sandf. Ch.*, 511; Estate of Moffat, 24 *Hun*, 325 ; Ward *v.* Ford, 4 *Redf.*, 34 ; Ogden *v.* Murray, 39 *N. Y.*, 203).

Decreed accordingly.